**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD ELMORE,** | : | |
| | : | |
| Plaintiff, | : | No. 2:25-cv-02076-JHS |
| | : | |
| v. | : | |
| | : | |
| **FALLS TOWNSHIP** | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Edward Elmore ("Elmore"/ "Plaintiff") hereby submits this Statement of

Material Facts in support of his opposition to Falls Township's ("Township"/ "Defendant")

Motion for Summary Judgment.

**Elmore's Status Within the Police Department Prior to Complaining about Discrimination**

1.  Edward Elmore became a patrol officer for Falls Township in 2000 right after he completed the police academy. **Pl. Ex. 1, Elmore Dep. 25:1-17**.

2.  Elmore was assigned additional duties, including SWAT, for 16 years. **Pl. Ex. 1, Elmore Dep. 29:2-6**

3.  Elmore was also assigned as an instructor for chemical munitions, noise distraction devices, and impact munitions. **Pl. Ex. 1, Elmore Dep. 30:11-31:5.**

4.  Elmore served as a K9 officer for the last 10 years of his employment. **Pl. Ex. 1, Elmore Dep. 32:4-7**

5.  As of January 1, 2021, when Nelson Whitney became Chief, Elmore had <u>no</u> disciplinary record. **Pl. Ex. 10, Elmore Affidavit ¶2.**

6. In 2021, then Sergeant Clark asked Elmore to serve on the hiring panel; he specifically told Elmore that he intended not to hire any female applicants in Falls Township. **Pl. Ex. 1, Elmore Dep. 57:17-22; Pl. Ex. 41, Elmore Interview by Obermayer Law Firm 51:4-11.**

7. Sgt. Clark had issues with the female officers. Sgt. Clark would rename the female officers or give them nicknames. **Pl. Ex. 1, Elmore Dep. 61:7-24.**

8. Prior to 2021, Detective Catherine Coffman (female) filed a complaint against Sergeant Clark, leading to his removal from detective and return to Patrol Sergeant. **Pl. Ex. 1, Elmore Dep. 61:13-21.**

9. The hiring panel in 2021 did not complete the applicant's written evaluations during the interview. Instead, the panel met afterward, and Sgt. Clark told them which applicants were moving on, and then they created scores that reflected this decision. **Pl. Ex. 41, Elmore Interview by Obermayer Law Firm 52:2-16.**

10. On July 27, 2021, Sgt. Clark sent Elmore the following text messages regarding his participation in the interview process:

> Hahaha, you're more than welcome Eddie. I think very highly of you and you rose to the occasion and then some as, as I knew you would. I knew you'd be a perfect fit and should be in additional leadership roles here.

**Pl. Ex. 42, 7/27/2021 Text Message from Clark to Elmore at Elmore_00001, Pl. Ex. 1, Elmore Dep. 48:6-10.**

11. On August 19, 2021, Sgt. Clark reached out to James McGowan regarding rating instruments for oral board candidates. The two men discussed the rating instruments, and then McGowan emailed Sgt. Clark the Oral Panel Questions Scoring Rubic. **Pl. Ex. 43, 8/19/2021 Email exchange between Clark and McGowan.**

12. On August 27, 2021, Sgt. Clark texted Elmore to meet in his office to complete new evaluations for the interviewed applicants. The text states: "Would you please meet Tony

[Anthony Fanelli] in my office at 12:00 pm, thanks." **Pl. Ex. 42, 7/27/2021 Text Message from Clark to Elmore at Elmore _0003; Pl. Ex. 41, Elmore Interview by Obermayer Law Firm, 52:16-53:2.**

13. Sgt. Clark met with Elmore and Officer A. Fanelli and said that the evaluation forms they created would not hold up in court. He had spoken with someone in Montgomery County, and he explained that the forms needed a grading scale to show what the different numbers mean**. Pl. Ex. 41, Elmore Interview by Obermayer Law Firm, 52:16-21.**

14. The three men created new forms to replace the forms they originally filled out. **Pl. Ex. 41, Elmore Interview by Obermayer Law Firm 52:22-24.**

15. On August 29, 2021, Elmore was involved in a lethal use of force incident while at work. He was subsequently cleared to return to work by a psychologist. **Pl. Ex. 10, Elmore Affidavit ¶3.**

**<u>February 2022 – Elmore Become President of FTPA and Complains to Chief about Discrimination of His Fellow Officers and Immediately is Retaliated Against</u>**

16. On the third Wednesday of February (February 16, 2022), Elmore became the President of the Police Association, which was his union. **Pl. Ex. 1, Elmore Dep. 92:13-93:12.**

17. In late February, the Township was investigating female Officer Victoria Crosier. **Pl. Ex. 2, Whitney Dep. 79:6-8.**

18. On or about February 24, 2022, Elmore spoke to Lt. Ward (Lt. Clark's Uncle) while on a call for a truck fire on Tyburn Rd. Lt. Ward warned Mr. Elmore that Chief Whitney had about five people he wanted to target to get rid of, and anyone who got in the way was collateral damage. Elmore asked him if the five people were the women and Steve Langan and Bruce Rhodunda, and Lt. Ward confirmed. Lt. Ward told Mr. Elmore, "He's a dog with a bone and he's not going to let it go." Mr. Elmore understood this as a direct threat not to advocate for his

coworkers Chief Whitney wanted to get rid of. Lt. Ward said he should just do whatever he is told, and then what can Chief Whitney do to him? **Pl. Ex. 10, Elmore Affidavit ¶6.**

19. On February 25, 2022, Elmore worked an overtime shift from 3 am to 7 am. **Pl. Ex. 1, Elmore Dep. 110:2-8; Pl. Ex. 10, Elmore Affidavit ¶13.**

20. After his overtime shift on February 25, Elmore attended K9 training during his regular shift, which started at 7 am. **Pl. Ex. 1, Elmore Dep. 108:6-109:6; 110:16-24.**

21. While a typical shift for a Falls Township Officer is 7 am to 7 pm, when an officer participates in a training day, the officer's shift is satisfied by 8 hours of training**.** On February 25, 2022, Elmore's full shift would be satisfied from7:00 a.m. to 3:00 p.m. **Pl. Ex. 1, Elmore Dep.124:16-125:11**.

22. The February 25th K9 training overlapped with the County scent certification. The K9 officers spent the morning of the 25th getting scent-certified by the County, and they were supposed to spend the afternoon conducting K9 training at a location secured by Bristol Township police. **Pl. Ex. 44, 12/9/2022 Elmore's Written Loudermill Response at Pg. Defense 1026-1027.**

23. At the start of his regular shift on February 25th, Elmore reported to the Bristol Township Police Department with his K9, Monty, to prepare for training with the County. Elmore was responsible for bringing the explosives to the County training session, so he arrived early at the County training site to set up. **Pl. Ex. 1, Elmore Dep. 111:1-24; 112:14-19.**

24. At the conclusion of the morning session, Elmore gathered up the explosives and went to lunch. **Pl. Ex. 1, Elmore Dep. 113:12-16**.

25. Bristol Township Police was supposed to plan a location for the afternoon training but hadn't secured one. The officers spent the lunch hour trying to secure a location for the afternoon

training session but were unable to do so. **Pl. Ex. 10, Elmore Affidavit ¶16. Pl. Ex. 1, Elmore Dep. 113:18-22**; **114:1-23; Pl. Ex. 44, 12/9/2022 Elmore's Written Loudermill Response at Defense 1027.**

26. Jeffry Dence, the Chairman of the Falls Township Board of Supervisors, did not know that the training day on February 25th consisted of two parts, and the second part was run by the Bristol Township Police, not the County. **Pl. Ex. 4, Dence Dep. 23:24-25:2.**

27. Mr. Dence was never told that Bristol Township was supposed to secure a location for the second half of the training day. *Id.*

28. On February 25, 2022, after lunch, Elmore returned to Falls Township, secured the explosives, and, between approximately 3:00 p.m. and 3:20 p.m., met with Chief Nelson Whitney about pursuing Officer Victoria Crosier and raised concerns about discrimination. **Pl. Ex. 1, Elmore Dep. 118:9-13; 124:4-15; 127:12-17.**

29. There is a CTV recording inside the Falls Township Police Department showing Elmore in the building at 2:45 p.m. and again at 3:30 p.m. on February 25, 2022. **Pl. Ex. 12, 2/14/2023 Email from Harran to Takita and Gallagher.**

30. On March 9, 2022, Elmore spoke to Chief Whitney regarding the disparate treatment of Officer Victoria Crosier (female) and Officers Steve Langan and Bruce Rhodunda (both over age 50). Elmore gave Chief Whitney a copy of the 14th Amendment because Chief Whitney had previously instructed Elmore to bring him case law concerning the unlawful process of. **Pl. Ex. 1, Elmore Dep. 135:12-25; Pl. Ex. 10, Elmore Affidavit ¶8.**

31. On March 16, 2022, Chief Whitney accused Elmore and two fellow canine officers of stealing time on February 25, 2022. Chief Whitney asked Lt. H. Ward to investigate. **Pl. Ex. 39, 3/29/2022 Memo by Lt. Ward.**

32. On March 29, 2022, Lt. H. Ward gave Chief Whitney a memo of his investigation and recommended that Elmore be terminated. The memo "K-9 Unit Administration Investigation" does mention that Mr. Elmore was in the building at 2:45 p.m. and again at 3:30 p.m. on the day of the training. **Pl. Ex. 39, 3/29/2022 Memo by Lt. Ward.**

33. Chief Whitney was placed on administrative leave on April 26, 2022, after a vote of no confidence was brought by 40 of the 49 Falls Township Police Officers. **Pl. Ex. 4, Dence Dep. 27:21:28:2; Pl. Ex. 34, PAFT Letter of No Confidence of Chief Whitney Nelson.**

34. On August 17, 2022, Bucks County DA's office issued Brady/Giglio determinations to Acting Chief Ward. The letter states that no issues were identified for Officers Elmore, Lundquist, or Fisher for the allegation of misuse of time on February 25, 2022. Two days later, Matthew Takita, Township Manager, forwards the Brady/Giglio determinations to Falls Township Board of Supervisors **Pl. Ex. 48, 8/17/2022 Letter from the DA's Office to Acting Chief Ward** and **8/19/2022 Email from Takita to the Township Board of Supervisors.**

35. Chief Whitney returned to work in September 2022. **Pl. Ex. 2, Whitney Dep 112:20-23.**

**<u>October 2022 Elmore Reports Discrimination in the Hiring Practices</u>**

36. Mr. Takita, the Township Manager, had the authority to request an investigation of a discrimination complaint brought by a Falls Township police officer, but he forwarded complaints to labor counsel to investigate. **Pl. Ex. 5, Takita Dep. 25:3-26:4.**

37. As the Township Manager, Takita was ultimately responsible for ensuring the Chief of Police did not retaliate against employees. **Pl. Ex. 5, Takita Dep. 59:6-24.**

38. On October 6, 2022, Elmore met with Mr. Takita and the Assistant Township Manager Richard Dippolito and reported discrimination in the police department's hiring process. **Pl. Ex. 5, Takita Dep. 52:3-21**.

39. On October 11, 2022, Mr. Dippolito reached out to Elmore to follow up on their October 6, 2022, discussion. **Pl. Ex. 49, 10/11/2022 Text Messages between Elmore and Dippolito; Pl. Ex. 1, Elmore Dep 157:11-20.**

40. On October 27, 2022, Elmore emailed Takita and Dippolito about disparate treatment of female Officer Metterle. **Pl. Ex. 9**, **12/27/2022 Email from Elmore to Takita and Dippolito**

41. Mr. Takita has no recollection of any investigation of Sgt. Clark in the fall of 2022. **Pl. Ex. 5, Takita Dep. 74:7-11**.

42. Mr. Takita has no recollection of investigating Elmore's discrimination complaint in his October 27, 2022, email. **Pl. Ex. 5, Takita Dep. 60:1-61:24**.

**<u>Chief Whitney Retaliated Against Elmore</u>**

43. Throughout October 2022, Elmore was working light duty after being injured on the job. **Pl. Ex. 1, Elmore Dep. 157:20-25**.

44. Delaware Valley Trust is the Township's Insurance Carrier for Personnel injured on duty. **Pl. Ex. 5, Takita Dep. 63:5-16**.

45. On October 27, 2027, Sherry McGovern, Falls Township HR Coordinator, and Mary Hick at Delaware Valley Trust began exchanging emails about Elmore's workers' comp claim and his light-duty work status. **Pl. Ex. 26, Email String between Sherry McGovern, DVT Representatives Mary Hicks and Marie Wallace**.

46. On November 4, 2022, McGovern emailed Hicks:

> There are many concerns with this claim coming from the Chief and Lieutenant. They feel he should not be on light duty because of the many restrictions he has with his right arm and having no contact with the public. Officer Elmore is a K-9 officer that drives a marked car to and from work. Last night while driving into work he claimed he banged his already injured arm on the arm rest in his vehicle which resulted in him calling out and not showing up for last night's shift. This is also a concern because of the personnel issues the command staff has been having with him.

**Pl. Ex. 26, 11/4/2022 Emails between McGovern and Delaware Valley Trust at pg. 2**.

47. On November 7, 2022, Lt. Ward emailed Elmore and told him he could no longer work light duty.

> Ed,
>
>     Delaware Valley Health trust has advised the Township that a light duty assignment is not available for you at this time. You are not to report for duty until you have been reevaluated after your upcoming surgery. You are further instructed not to operate Township vehicles until further notice. If you have any questions you can call me.

**Pl. Ex. 50, 11/7/2022 Email from Lt. Ward to Elmore**.

48. The next day, Elmore learns that Lt. Ward's email is simply not true. He reaches out to Mary Hicks at Delaware Valley Trust, and Hicks tells Elmore, "It is the employer who determines if they are able to accommodate the restrictions." **Pl. Ex. 51, 11/7 and 11/8 Text Messages between Elmore and Hicks**.

## November 2022 Elmore Complains About Discrimination

49. On November 15, 2022, Elmore and Sgt. R. Fanelli met with Mr. Takita and Mr. Dippolito to discuss labor issues and grievances, including how the Township was treating Victoria Crosier because she is a woman. **Pl. Ex. 10, Elmore's Affidavit ¶22**.

## November 2022 Elmore Attends Loudermill Hearings As Union Representative

50. On November 21, 2022, Mr. Elmore attended the Loudermill hearings for Officers Steven Langan and Victoria Crosier as their union representative, wearing a shirt featuring a picture of Chief Whitney posing next to Derek Chauvin. **Pl. Ex. 10, Elmore's Affidavit ¶24**.

51. Then acting Chief Whitney posed for the picture during a Black Lives Matter Rally in 2020 that the Falls Township police officers attended. During the rally, Acting Chief Whitney mentioned to the officers that "I hope the protestors don't think I'm Derek Chauvin and chase me down the street." **Pl. Ex. 1, Elmore Dep. 173: 14-17**. Acting Chief Whitney insisted that he looked like Derek Chauvin in Chauvin's booking photo. **Pl. Ex. 1, Elmore Dep. 174:1-6**. Another officer pulled up the booking photo of Derek Chauvin on his phone, and Acting Chief Whitney stood next to the phone.  **Pl. Ex. 1, Elmore Dep. 174:8-13.**

52. Elmore asked Acting Chief Whitney if he wanted to see himself posing next to the picture. He said "yeah," and he posed next to the photo, and Elmore took the picture that appeared on the shirt he wore on November 21, 2022. **Pl. Ex. 1, Elmore Dep. 174:13-175:3.**

53. Chief Whitney did not complain about the picture of him posing next to a picture of Derek Chauvin between 2020 and 2022. **Pl. Ex. 5, Takita Dep. 85:5-8**.

54. Mr. Takita did not request an investigation into the circumstances surrounding how the picture was taken. **Pl. Ex. 5, Takita Dep. 85:12-14**.

55. Mr. Takita did not have any concerns with the Chief Whitney posing in a picture next to Derek Chauvin's picture. **Pl. Ex. 5, Takita Dep. 85:15-19.**

56. Mr. Dence, Chair of the Board of Supervisors, did not find Elmore's shirt offensive. Dence explained:

> And, you know, Melissa Atkins'
> recommendation. A lot of them, I will tell
> you, were offended by the T-shirt incident. I
> wasn't because I'm a union man, and I know
> that's a standard union tactic, you know.
> If I got fired tomorrow from my job,
> my business manager would have my picture on
> T-shirts printed up, and everybody on the job
> would be wearing them.
> So, you know, that's just something

that -- how they do things.

**Pl. Ex. 4, Dence Dep. 98:8-18.**

**Chief Whitney Continues to Subject Elmore to Retaliation**

57. On December 2, 2022, three months after Chief Whitney returned from administrative leave, he issued Elmore a Loudermill Notice regarding allegations of misuse on February 25, 2022. **Pl. Ex. 14, 12/2/2022 Email from Whitney to Elmore Subject: Loudermill Hearing; Pl. Ex. 2, Whitney Dep. 112:20-23.**

58. In contrast, in 2021, Sgt. Brian White attended CPR training that lasted two and a half hours and then disappeared for his entire 12-hour shift. According to the Township's disciplinary records, Sgt. White was considered AWOL. Chief Whitney gave Sgt. White a written warning that was removed from his personnel file after the reckoning period. **Pl. Ex. 2, Whitney Dep. 91:14-92;  Pl. Ex.45, Falls Township Police Department Discipline Tracker**.

59. On December 5, 2022, Chief Whitney accused Elmore of Conduct unbecoming of an officer for wearing a shirt featuring a photo of his face next to Derek Chauvin on November 21 and for distributing a document/memo containing the same photo that complained of discrimination—racism and sexism—within the Falls Township Police Department. **Pl. Ex. 52, 12/5/2022 Memo from Whitney to Elmore**.

60. Elmore did not receive the December 5, 2022, Memo from Chief Whitney. In his Loudermill response dated December 9, 2022, he states:

> In regard to your memo dated December 6, 2022 (Insubordination) This was the first I was aware of the December 5th memo, I had not seet [sic] the December 5th memo tucked into the RSVP link.

**Pl. Ex. 44, 12/9/2022 Elmore's Written Loudermill Response at Pg. Defense 1041.**

61. On December 6, 2022, with consultation of Labor Counsel, Thomas Hearn and Melissa Atkins at the Obermayer law firm, Chief Whitney emailed a memo to Elmore accusing him of insubordination for complaining about discrimination- racism and sexism within the Falls Township Police Department. **Pl. Ex. 53, 12/6/2022 at 4:12 PM Email from Obermayer Attorney to Chief Whitney; 12/6/2022 at 4:22 PM Email from Whitney to Elmore Subject: Insubordination with Memo to Elmore – 6 Dec 22.pdf attached; the 12/6/2022 Memo from Whitney to Elmore Re: Insubordination**.

**Elmore Reports Retaliation by Chief Whitney to the Township Manager, and His Complaints Were Not Investigated**

62. On December 7, 2022, Elmore reported harassment and retaliation by Chief Whitney in an email to Township Manager Matthew Takita, Assistant Township Manager Rich Dippolito, and the Chair of the Board of Supervisors, Jeff Dence. **Pl. Ex. 17, 12/7/2022 Email from Elmore to Takita, Dippolito and Dence**.

63. Elmore's December 7, 2022, email states Chief Whitney ordered him to "Cease and Desist" his union activities as PAFT president and threatened termination:

> [F]or meeting with union members, advocating for union members subject to discipline, challenging the credibility of administration involved discipline and addressing deeply troubling issues with racism and sexism within our department an how that has affected our members and our conditions.

**Pl. Ex. 17, 12/7/2022 Email from Elmore to Takita, Dippolito and Dence**.

64. That same day Matthew Takita forwarded Elmore's December 7th email reporting Harassment and Retaliation by Chief Whitney to Thomas Hearn, and Melissa Atkins at the Obermayer law firm. ***Id.***

65. Mr. Takita has no recollection of an investigation of the complaints Elmore made in his December 7, 2022, email. **Pl. Ex. 5, Takita Dep. 91:13-93:13**

66. On December 9, 2022, Elmore submitted his written response to the allegations in the Loudermill Notice. Elmore's response is a detailed account of the events on February 25, 2022, states:

> You are aware, I have made complaints to the township regarding unlawful discriminatory practices and I have cooperated with investigated by the targeted officers. "The Officers of the Falls Township Police Department and the residents of Falls Township have a right to a Police Department that is free of racism and sexism" should not be a controversial statement.
>
> In regard to the lawfulness of your orders to be silent on these issues and your retaliatory threats of termination for engaging in legally protected activity, I will formally address these issues in the future.

**Pl. Ex. 44, 12/9/2022 Elmore's Written Loudermill Response at Pg. Defense 1041.**

67. On December 13, Elmore was informed he was placed on paid Administrative Leave and provided a list of things he was prohibited from doing**.**  The notice does not state that the administrative leave is disciplinary. **Pl. Ex. 54, 12/13/2022 Email and Memo from Chief Whitney to Elmore.**

68. Elmore remained on administrative leave from December 2022 until June 2023. **Pl. Ex. 1, Elmore Dep. 183:17-184:16**.

## **Board of Supervisors Hired a Third Party to Investigate Whitney's Allegations Against Elmore.**

69. In December of 2022, the Falls Township Board of Supervisors hired Frederick Harran to investigate what had occurred on the training day on February 25, 2022, because the Board did

not trust Lt. Ward's investigation of the K9 officers' training day conduct on February 25, 2022. **Pl. Ex. 4, Dence Dep. 40:18-41:25**.

70. Frederick Harran was hired within days of Elmore being placed on administrative leave. On December 16, 2022, Lauren Gallagher, Township Solicitor, emailed Frederick Harran documents for his investigation.**Pl. Ex. 18, 12/16/2022 Email from Lauren Gallagher to Frederick Harran**.

71. While Harran was still conducting his independent investigation, on January 27, 2023, Chief Whitney and the Obermayer Law Firm recommended to the Board of Supervisors that Officer Elmore be terminated**.** The Township did not follow this recommendation, and Mr. Harran's investigation continued throughout the spring of 2023. **Pl. Ex. 55, 1/27/2023 Memo from Whitney to the Board of Supervisors; Pl. Ex. 2, Whitney Dep. 146:4-147:12. Also see ¶¶74-78.**

**Independent Investigation by Frederick Harran Disagrees with Chief Whitney and Labor Counsel's Request to Terminate Elmore**

72. On February 14, 2023, Fred Harran emailed Matthew Takita and Lauren Gallagher, Esq. and informed them:

> I was given a video of some tape from with inside the building that shows Elmore in the building at 2:45 and again at 3:30 on the date of the canine training. I spoke with Neslon the other day and his story has changed a little bit. I think we should discuss this further before going to the executive board**.**

**Pl. Ex. 12, 2/14/2023 Email from Frederick Harran to Takita and Gallagher.**

73. On March 11, 2023, Mr. Harran emailed Mr. Takita an update on his investigations. including:

> 3. Regarding the canine investigation at this point, I've interviewed everybody but Officer Elmore. I wanted to interview him last and have not been able to connect with him. I am attempting to do that this week. I will give them more detailed report regarding this investigation, however, talking to Officer Fisher and Officer Linquist, it is my opinion that

their interviews and reports are consistent with one another. **The fact that there's 2 1/2 hours of missing time that day is  explained**. They state they were at lunch long and discussing canine matters. This, to some degree, is a misuse of time; however, this is common practice in policing and in Falls Township's past practice.

These two officers have no prior discipline in their file at all for a long career. I felt that they were both forthright and honest in their answers, but of course, much time has passed.

 I do not believe an arbitrator would uphold any suspension for this incident a letter to be placed in their jackets, putting them on warning or canceling regarding long lunch, breaks, and potential miss use of time.  I do not believe an arbitrator would uphold any suspension for this incident a letter to be placed in their jackets, putting them on warning or canceling regarding long lunch, breaks and potential miss use of time. Chief Nelson Whitney has certainly changed the policy in Falls Township where training should be hour for hour and if officers are scheduled for an eight hour training day, they are to remain on location training.

I don't believe after the interview with Officer Elmore, anything will change regarding the canine incident.

**Pl. Ex. 12, 3/11/2023 Email from Harran to Takita and Gallagher. (Emphasis added.)**

74. On April 5, 2023, Mr. Harran provided Mr. Takita with his findings and recommendations regarding his investigation of events involving the K9 officers on 2.25.22. He states:

**Conclusion:**

Officer Elmore, regardless of who he was meeting with on February 25th, was in fact in the building and I do not believe he could be held responsible for any misuse of time.  Officer Lundquist and Fisher, in their long careers in Falls Township have no documented previous discipline.  Officer Lundquist and Fisher did in fact take a long lunch break, however whether they were discussing K9 issues and policy as part of their training day, cannot be sustained or unstained, both their statements are consistent.

It is common practice in the police environment, that when officers attend training and are finished training for the day, they are released with a full day's pay.  It has been my experience, that in this situation, officers may take extended lunches and often talk about training outside of the normal training arena.  I understand that in Falls Township, prior to Chief Whitney, the officers were held with minimal accountability with their use of time.  Moving forward, officers need to be made aware of the expectations regarding training days.  Although, according to Chief Whitney and Lt. Ward, Officers have been made aware, I believe an arbitrator would not uphold any discipline for these officers.

**Recommendations:**

Officer Lundquist and Fisher should receive a written reprimand for their misuse of time. **No recourse should be taken for Officer Elmore**.

**Pl. Ex. 13, 4/5/2023, Memo from Harran to Takita. (Emphasis added.)**

75. On April 7, 2022, Mr. Takita emailed Mr. Elmore to say that the Board of Supervisors has determined that **no disciplinary action** was warranted for the training day on February 25, 2022**. Pl. Ex. 56, 4/7/2023 Email from Takita to Elmore (emphasis added).**

76. According to Mr. Takita, Mr. Harran's investigation determined there was no theft of time, and, as far as Mr. Takita was concerned, when he sent Elmore the email on April 7, 2023, the subject was closed. **Pl. Ex. 5, Takita Dep. 104:11-21;109:13-20.**

## Chief Whitney Uses the Promotional Process to Retaliate Against Elmore – The Township Does Not Investigate

77. In the Spring of 2023, while Elmore was still on administrative leave, the police department initiated a promotional process, and Elmore was permitted to participate. **Pl. Ex. 57, 12/20/2022, Email Announcing Promotional Process; Pl. Ex. 1, Elmore Dep. 184:20-186:2**

78. The police department promotional process consists of three elements: Objective Examination (55%), Performance Evaluation (10%), and Oral Examination (35%), which together constitute the applicant's overall score. **Pl. Ex. 58, CBA Article 33 Promotional Procedures, § 4.**

79. To ensure an impartial promotion process in accordance with the Collective Bargaining Agreement (CBA), employees of Falls Township are prohibited from participating in the promotion process, including administering the exam and conducting interviews. **Pl. Ex. 1, Elmore Dep. 186:13-18; Pl. Ex. 58, CBA Article 33 §5.**

80. Sgt. A. Fanelli, Elmore's immediate supervisor, completed Elmore's performance evaluation on April 19, 2023, assigning Elmore an overall performance score of 90%. **Pl. Ex. 22, 4/19/2023, Elmore's Performance Evaluation by Fanelli.**

81. The written exam was administered on April 26, 2023. Despite the clear terms of Article 33 §4 of the CBA, Lt. Clark proctored the exam, which concerned Elmore, given that he had recently accused Lt. Clark of engaging in employment discrimination. **Pl. Ex. 1, Elmore Dep. 186:8-187:5; Pl. Ex. 59, 4/26/2023, Applicant's Test Scores with Date of Exam.**

82. Mr. Elmore described the conditions in the room during the written exam as follows:

> Throughout the written test, Chris Clark did not stay in the front of the room where was initially his proctor position. He paced back and forth the back of the room past me. Would stand behind me, made huffs, an puffs and grunts, yet somehow I managed to make it all the way through the written portion and actually did very ,very well.

**Pl. Ex. 1, Elmore Dep. 187:19-188:1.**

83. Of the officers who were patrolmen seeking the corporal position, Elmore received the highest numerical score on the written test, 84.80%. **Pl. Ex. 1, Elmore Dep. 188:9-12; Pl. Ex. 59, 4/26/2023, Applicant's Test Scores with Date of Exam.**

84. On April 27, 2023, Chief Whitney published a memo listing the performance evaluation ratings for all applicants seeking promotion. The memo stated that Elmore's score was 51%. **Pl. Ex. 60, 4/27/2023 Whitney's Memo RE: Performance Ratings.**

85. The next day, on April 28, 2023, Chief Whitney and Lt. Clark completed a performance evaluation for Mr. Elmore, lowering his score from 90% to 51% to match the score posted the day before in Chief Whitney's Memo. **Pl. Ex. 60, 4/27/2023 Memo; Pl. Ex. 23, 4/28/2023, Elmore's Subsequent Performance Evaluation by Chief Whitney and Lt. Clark.**

86. By reducing Mr. Elmore's performance evaluation score from 90% to 51%, his overall score dropped. Elmore's ranking among the other applicants, based on his original performance

review score, was No. 5; after the reduced performance review, it was No. 18. **Pl. Ex. 61, Township's List of Officers Performance Reviews.**

87. In contrast, Officers James Szamboti, Ryan Murphy, and Alexander Sansome, who were significantly younger than Elmore, had their original performance review scores increased. Yet, on July 5, 2021, Ryan Murphy had received a one-day suspension for "Failure to be home after calling off sick" and a written reprimand for "changing residence without 24 hours' notice."  On February 2, 2022, Nicholas Philippe had received a counseling session with Lt. Ward for "Accident -damage to police vehicle as a result of accident." **Pl. Ex. 61; Pl. Ex. 45, Falls Township Police Department Discipline Tracker.**

88. Officers James Szamboti, Ryan Murphy, Nicholas Philippe, and Alexander Sansome were the officers who were promoted to Corporal; their original performance review scores were lower than Elmore's. **Pl. Ex. 61; Pl. Ex. 62, 7/27/2023 Whitney Memo Promotion Announcement**.

89. Officers James Szamboti, Ryan Murphy, Nicholas Philippe, and Alexander Sansome were promoted to Corporal despite lower written test scores and performance reviews before Chief Whitney and Lt. Clark reduced Elmore's written score. **Pl. Ex. 61, Township's List of Officers Performance Reviews; Pl. Ex. 62, 7/27/2023 Whitney Memo Promotion Announcement.**

90. In July 2023, Officer James Szamboti was 36 y/o, Officer Ryan Murphy was 30 y/o, Officer Nicholas Philippe was 33 y/o, and Officer Alexander Sansome was 30 y/o when they were promoted to Corporal in July 2023. Elmore was 46 years old. **Pl. Ex. 35, Defendant's Answers to Plaintiff's First Set of Interrogatories No 1.**

91. On May 3, 2023, Elmore emailed Mr. Takita, Mr. Dippolito, and the President of the Board of Supervisors, Jeffry Dence, asserting retaliation for reporting discriminatory hiring practices in the police department. **Pl. Ex. 36, 5/3/2023, Email from Elmore to Takita, Dippolito and Dence**.

92. Elmore's May 3rd email stated:

Last year I came to you in good faith to bring to light the issue of discrimination in our hiring procedures, specifically having been directed by then Sgt. Clark that it was our goal to avoid having to hire any female applicants. I detailed how I was recruited to be a part of the interview process by Sgt. Clark and how applicant evaluation forms were created to provide the desired results. I also detailed how we were instructed at a later date to create new forms with rating scales as Sgt. Clark did not think the original ones would 'hold up in court'. I later learned that this change was not to address a hypothetical future challenge but to be used as rebuttal for current active EEOC complaints filed by our female officers. I informed you that I had spoken to those officers as well as their legal council about these issues that I had first hand participation in at the direction of Sgt. Clark.

As I am sure you are already fully aware, now Lt. Clark was permitted to rescore the performance evaluations of those of us testing in this promotional process. It is my understanding that my most recent immediate supervisor, Sgt. A. Fanelli scored my evaluation at 90% out of 100% but the score was then reduced to 51%, a reduction of 39 points and a full 20 points below the median score.

I don't believe any neutral party observing this could come to any conclusion other than that this was retaliation for having made good faith reports for EEOC violations and cooperating with current EEOC investigations.

*Id.*

93. In response to Elmore's May 3 email, the Township finally initiated an investigation into the discriminatory hiring practices that Elmore had originally reported to Takita and Dippolito on October 6, 2022. Chief Whitney was informed of the investigation and asked to gather information. **Pl. Ex. 80, 7/12/2023 & 7/13/2023 Emails from McGovern, Takita, Whitney; Also see ¶39 above.**

94. According to Mr. Takita, he has no recollection of the Township investigating Elmore's retaliation complaint in his May 3, 2023, email. **Pl. Ex. 5, Takita Dep. 112:18-115:17.**

95. Elmore is not the only officer to complain that the 2023 promotional process was discriminatory. On July 25, 2023, Cpl. Nicole White filed a gender discrimination complaint regarding the process with Chief Whitney, and she sent the same complaint to Mr. Takita, and

Mr. Dence on July 26. **Pl. Ex. 63, 7/25/2023 Email Complaint from Officer White to Whitney and 7/26/2023 Email from Officer White to Takita and Dence.**

**Elmore is Subjected to More Retaliation in the Summer of 2023**

96. On May 24, 2023, Mr. Harran issued a memo to Obermayer attorney Melissa Atkins. The memo states:

> Officer Elmore may have violated the following policy under the Falls Township Police Department Policy 2.8.1 discipline, sub-section conducting unbecoming an officer, section 103.150, releasing police information or policy without authorization, acting in the capacity, or speaking for the department of the chief. The first offense for the violation is reprimand to 5 days suspension.

**Pl. Ex. 21, 5/24/2023 Memo from Harran to Atkins**. Following Harran's email, on May 30, 2023, Melissa Atkins emailed Takita and her colleague Tom Hearn informing them that investigations need to be completed in 90 days, so the timeline for the allegations of harassment against Elmore "may be blown." **Pl. Ex. 21, 5/31/2023 Email from Atkins to Takita and Hearn.**

97. On June 1, 2023, Mr. Takita emailed the Board, recommending a maximum five-day suspension for Elmore, allegedly based on Mr. Harran's May 24th memo, and recommending that a Loudermill notice be issued. **PL. Ex. 64, 6/1/2023 Email from Takita to the Board of Supervisors; Pl. Ex. 21, 5/24/2023 Memo to M. Atkins, Falls Township Labor Counsel**.

98. On June 2, 2022, Elmore emails Mr. Takita, Mr. Dippolito, and Mr. Dence notifying them that he has been on administrative leave for 172 days; that the township was 82 days past the deadline for any disciplinary action; that he completed a Fitness for Duty Exam on May 15, 2023, as directed by the Township, and still has not been brought back to work. **Pl. Ex. 65, 6/2/2023 Email from Elmore to Takita, Dippolito and Dence.**

99. On June 8, 2022, Mr. Dence, the Chair of the Board of Supervisors, emailed Mr. Takita asking why Elmore had not been brought back to work the next day. **Pl. Ex. 66, 6/8/2023 Email from Dence to Takita and Takita's Email Response to Dence**.

100.　　Mr. Takita responded that he would direct Chief Whitney to advise Elmore to return to work tomorrow. ***Id***.

101.　　Despite Takita's representation to the Board of Supervisors, Elmore was not brought to work on June 9, 2022, but was brought back on June 16, 2022. **Pl. Ex. 67, 6/15/2022, Email from Takita to Elmore, Subject: Return to Work**.

102.　　On June 12, 2023, Thomas Hearn and Melissa Atkins at Obermayer sent a Memo to the Board of Supervisors recommending Elmore be terminated for:

- stealing time on February 25, 2022,
- lying during the investigation into the time theft,
- insubordination and engaging in conduct unbecoming an officer for the Vote of No Confidence Against Chief Whitney 2022,
- wearing the Shirt with Whitney and Derek Chauvin's photo,
- accusing Chief Whitney of racially motivated unconstitutional activity.

**Ex. 25, 6/12/2023 Obermayer Memo to Falls Township Supervisors.**

103.　　Each of the items listed in Obermayer's June 12th report was investigated by Mr. Harran, and Mr. Harran did not recommend termination; as for the February 25, 2022, he did not find Elmore had committed any violation. **See ¶¶76, 78**.

104.　　The Board of Supervisors did not follow Obermayer's recommendation. Not until June 15, 2023, did Takita issue a formal letter to Elmore directing his return to modified duty on June 19, 2023. **Pl. Ex. 67, 6/15/2023 Email from Takita to Elmore; Pl. Ex. 68, Article 12 of the CBA.**

105.　　On July 17, 2023, Elmore requested a Step II consideration of his grievance for the harassment complaint. **Pl. Ex. 69, Elmore's Step II Grievance**.

106.     On August 8, 2023, Mr. Takita issued a Step II response, sustaining Elmore's grievance for violation of the 90-day timing requirement under the collective bargaining agreement. **Pl. Ex. 46, 8/8/23 Email from Takita to Elmore**.

107.     According to Mr. Takita, as of August 8, 2023, Elmore's personnel file would reflect **no** discipline. **Pl. Ex. 5, Takita Dep. 142:7-25**.

108.     According to Mr. Takita, as of August 8, 2023, Elmore had a clean record. **Pl. Ex. 5, Takita Dep. 142:7-143:8**.

**Elmore Files a Charge of Discrimination with the EEOC and the PHRC**

109.     On September 20, 2023, Elmore filed a Charge of Discrimination with the Equal Employment Opportunity Commission, identifying Chief Whitney and Lt. Clark as having subjected him to adverse employment action in retaliation for reporting discriminatory hiring practices. He also asserted that he was subjected to age discrimination. **Pl. Ex. 24, Elmore's 9/20/2023 EEOC Charge of Discrimination**.

110.     Chief Whitney was informed that Elmore filed a Charge of Discrimination with the EEOC. **Pl. Ex. 2, Whitney Dep. 175:14-22**.

111.     According to Mr. Takita, the EEOC charge was given to Labor Counsel, which was Obermayer, and the insurance carrier. **Pl. Ex. 5, Takita Dep. 145:16-146:2, 147:9-12**.

112.     Chief Whitney worked with the attorney hired by the insurance company to draft a response to Plaintiff's EEOC Charge of Discrimination. **Pl. Ex. 2, Whitney Dep. 176:8-25**.

113.     Mr. Takita has no knowledge of any investigation by the Township into the complaints of discrimination in Elmore's EEOC Charge of Discrimination. **Pl. Ex. 5, Takita Dep. 147:13-20**.

**Whitney Subjects Elmore to Retaliation in December 2023**

114.    In the summer of 2023, while Elmore was on administrative leave, Robert Kent, a Falls Township resident, advised Elmore that he was looking for a home for a dog named Oakley that had become a problem with the other dogs and his family on its property. **Pl. Ex. 1, Elmore Dep. 212:4-12**, **213:18-22**.

115.    Elmore agreed to take the dog (including the food, veterinary and other expenses that would come with it) because he was a lover of dogs and understood that he was preventing this dog, named Oakley, from being placed in a shelter or being put down. **Pl. Ex. 70, 2/23/2024 Elmore's Response to the 2/20/2024 Loudermill, at pg. 2**.

116.    Elmore later took on a second dog from Kent. Elmore did not provide Kent anything in exchange for the two dogs he rescued. **Pl. Ex. 1, Elmore Dep. 216:2-6**.

117.    There is no Township policy requiring an officer to obtain permission from the Township before adopting a dog. **Pl. Ex. 5, Takita Dep. 162:14-17**.

118.    Elmore had been a member of the Falls Township K9 unit for 10 years, and his longtime canine partner Monty was headed toward the required mandatory retirement in January 2024, when he would reach the age of 12. **Pl. Ex. 70, 2/23/2024 Elmore's Formal Response to the Loudermill Notice Dated February 20, 2024 at pg. 2**.

119.    Elmore hoped and intended that he would remain in the canine unit and would be assigned a new dog. **Pl. Ex. 70, 2/23/2024 Elmore's Formal Response to the Loudermill Notice Dated February 20, 2024 at pg. 2**.

120.    Chief Whitney was not a supporter of the K9 unit and wanted to reduce its size, but the Board of Supervisors did not. **Pl. Ex. 4, Dence Dep. 71: 21-72:12**.

121.    Chief Whitney testified that he believed there was a history of corruption in the K9 unit. When asked for examples at his deposition, he could identify only the February 25,

2022, incident regarding the reporting of overtime on the canine training day. **Pl. Ex. 2, Whitney Dep. 60:2-22**.

122.      As Elmore began training the dog Oakley, he thought the dog had "a good nose" and could be a candidate for the K9 unit. He mentioned this to Lt. Steve Langan, who expressed interest in the possibility. **Pl. Ex. 1, Elmore Dep. 215:2-17.**

123.      Elmore and Langdon did not know at the time that the dog had some health issues regarding his teeth that would ultimately have made it impossible for him to serve in the K9 unit. **Pl. Ex. 72, 7/8/2025, Part II, Falls Township Arbitration – Edward Elmore, Langan, Testimony 48:19-25.**

124.      At a meeting with Chief Whitney on November 29, 2023, Langan informed Chief Whitney that Elmore's current K9 partner, Monty would have to retire soon. Langan mentioned the possibility of Elmore's dog joining the unit as his new partner. **Pl. Ex. 72, 7/8/2025, Part II, Falls Township Arbitration – Edward Elmore, Langan, Testimony 16:13-15; 17:9-21.**

125.      During the November 29th conversation, Chief Whitney informed Lt. Langan that he would like to open the K9 position to others and that Elmore could apply and go through the process like everyone else, which was not the normal process according to Lt. Langan's experience. *Id*. **at 17:25-18:7**.

126.      Chief Whitney asked Lt. Langan if Elmore did not become the next canine handler, would he be willing to donate the dog – Oakley- to the canine unit. Lt. Langan told the Chief he didn't know; Oakley was Elmore's pet. *Id.* **at 19:3-7**.

127.      The day after Elmore refused to donate his dog to the police department's K-9 unit, Chief Whitney accused Elmore of bribery, and an investigation ensued. **Pl. Ex. 1, Elmore Dep. 210:1-21, 211:18-212:1, 216:7-14**.

128.     Chief Whitney told Mr. Takita he was concerned about how Elmore got the dog from Kent, that "it was supposedly gifted to them, and then the value of the gift violated some police policy." **Pl. Ex. 5, Takita Dep. 151:18-23.**

129.     Chief Whitney never spoke to Elmore about the dog named Oakley. **Pl. Ex. 28, Plaintiff's Request for Admission ¶85; Pl. Ex. 29, Defendant's Responses to Plaintiff's Request for Admission ¶85.**

130.     Everything that Chief Whitney knew about the dogs came from someone other than Elmore. **Pl. Ex. 5, Takita Dep. 155:1-3.**

131.     Chief Whitney never saw or inspected the dog named Oakley. **Pl. Ex. 28, Plaintiff's Request for Admission ¶78; Pl. Ex. 29, Defendant's Responses to Plaintiff's Request for Admission ¶78**.

132.     Mr. Takita never spoke to Elmore about how he got the dogs. **Pl. Ex. 5, Takita Dep. 151:24-152:1**.

133.     Mr. Takita never knew the value of the dogs when Elmore obtained them. **Pl. Ex. 5, Takita Dep. 152:9-153:6.**

134.     Mr. Takita never made any inquiries about the health condition of the dogs when Elmore obtained them. **Pl. Ex. 5, Takita Dep. 153:1-154:7.**

135.     Mr. Takita has no knowledge of how much the dogs' vet bills cost Elmore. **Pl. Ex. 5, Takita Dep. 153:1-154:7.**

136.     Everything that Mr. Takita knew about dogs Elmore got from Mr. Kent came from Chief Whitney. **Pl. Ex. 5, Takita Dep. 155:1-3.**

137.    The Township never assessed the physical condition of the dog named Oakley. **Pl. Ex. 28, Plaintiff's Request for Admission ¶79; Pl. Ex. 29, Defendant's Responses to Plaintiff's Request for Admission ¶79**.

138.    The Township never took steps to determine whether the dog named Oakley had any economic value. **Pl. Ex. 28, Plaintiff's Request for Admission ¶80; Pl. Ex. 29, Defendant's Responses to Plaintiff's Request for Admission ¶80**.

139.    After the meeting with Lt. Langan on November 29th, Chief Whitney also discussed the matter with Lt. Clark, who had been the subject of Elmore's hiring discrimination charge, which was included in the EEOC charge that Elmore had recently filed. **Pl. Ex. 2, Whitney Dep.  221:13-222:2; Pl. Ex. 24, Elmore's 9/20/2023 EEOC Charge of Discrimination**.

140.    Lt. Clark told Chief Whitney about an arrest Elmore had made on Robert Kent's property in 2022, which he thought was problematic. **Pl. Ex. 2, Whitney Dep. 221:13-222:2; 229:25-230:2.**

141.    Mr. Kent, who operated a landscaping business, had gotten into an argument with Lawrence Bell, a union organizer who had trespassed on his property. Mr. Kent called the Township police, and Elmore responded. **Pl. Ex. 30, Elmore's 7/26/2022 Incident Report**.

142.    Elmore and the two men discussed the situation. Mr. Kent said he told Mr. Bell to leave his property numerous times, and Mr. Bell refused. Mr. Bell hit his arm and struck the visor he was wearing, blocking his vision. Mr. Kent said he feared a further assault was imminent. *Id*.

143.    Elmore, while still on the scene with Mr. Kent, Mr. Bell drove by and made a gun gesture over the roof of his car. *Id*.

144.    Elmore charged Mr. Bell with terroristic threats, defiant trespass, simple assault, and harassment. *Id.*

145.    While Elmore was on administrative leave in February 2023, Clark attended Mr. Bell's preliminary hearing on Falls Township's behalf. **Pl. Ex. 2, Whitney Dep. 222:19-23.**

146.    In February 2022, Clark did not express any concerns about the arrest and the charges. **Pl. Ex. 2, Whitney Dep. 222:24-223:3.**

147.    Mr. Bell pled guilty to reduced charges. **Pl. Ex. 2, Whitney Dep. 222:5-18.**

148.    Chief Whitney contended that Elmore's acceptance of the rescue dog Oakley may have constituted acceptance of a bribe or gratuity in connection with Elmore's July 26, 2022, arrest of Mr. Bell more than a year earlier. **Pl. Ex. 2, Whitney Dep. 222:5-223:18**.

149.    On November 30, 2023, almost a full year after attending Mr. Bell's preliminary hearing, Lt. Clark advised Chief Whitney that he was suspicious of how Elmore had handled the arrest. **Pl. Ex. 2, Whitney Dep. 221:13-222:18.**

150.    On December 1, 2023, Mr. Takita instructed Lt. Clark and Officer Reeves to get a statement from Mr. Kent. **Pl. Ex. 5, Takita Dep. 157:3-13**.

151.    Mr. Takita wasn't concerned that he sent Lt. Clark to interview Mr. Kent about the allegation of bribery despite the fact that Mr. Elmore had filed an EEOC Charge in September 2023 alleging discrimination by Lt. Clark because Officer Reeves, was there to witness the discussion. **Pl. Ex. 5, Takita Dep. 158:10-159:1**.

152.    Lt. Clark was ranked above Officer Reeves. Officer Reeves answered to Lt. Clark. **Pl. Ex. 5, Takita Dep. 159:3-9**.

153.    Lt. Clark and Officer Reeves did not obtain a written statement from Mr. Kent. **Pl. Ex. 11, Obermayer Report at Pgs. 9-10**.

154.     Mr. Takita had no knowledge that Lt. Ward and Officer Reeves accused Mr. Kent of Bribery when they spoke to him. **Pl. Ex. 5, Takita Dep. 162:3-5.**

155.     On December 5, 2023, Mr. Takita emailed the Board of Supervisors regarding Chief Whitney's concern about the "donation" of two dogs from Kent's tree service. **Pl. Ex. 73, 12/5/2023 Email from Takita to Board of Supervisors.**

156.     On December 15, 2022, Takita forwarded his December 5 email to the Board of Supervisors to Melissa Atkins and Thomas Hearn at Obermayer, asking that the "donation" of the dogs be investigated by a third party. **Pl. Ex. 73, 12/15/2023 Email from Takita to Thomas Hearn and Melissa Atkins**.

157.     As of December 15, 2023, Melissa Atkins and Thomas Hearn at Obermayer had already recommended that the Township terminate Elmore as Chief Whitney had requested on two separate occasions. It supported Chief Whitney's written memorandum asking the supervisors to terminate Elmore in January 2023, as well as its own separate memorandum dated June 13, 2023. **See ¶ 70**; **Ex. 25, 6/12/2023 Obermayer Memo to Falls Township Supervisors; Pl. Ex. 5, Takita Dep 175:15-20.**

158.     Mr. Takita admits that when he sent the emails to the Board of Supervisors on December 5 and Obermayer on December 15, he didn't know how Elmore obtained the dogs, and he didn't know why he used the word "donation" in his emails. **Pl. Ex. 5, Takita Dep. 165:8-166:1, 166:18-21**.

159.     Mr. Takita heard that Elmore rescued the dogs from Mr. Kent, yet he represented to the Board of Supervisors and Melissa Atkins and Thomas Hearn at Obermayer that the dogs had been donated, because that was what the Chief told him. **Pl. Ex. 5, Takita Dep. 152:2-7, 166:14-167:3.**

160.    The Township filed its Response to Plaintiff's EEOC Charge on December 18, 2023. **Pl. Ex.74, Township's 12/18/2023 Position Statement**.

**Obermayer Investigates and Recommends Elmore's Termination Again**

161.    On January 2, 2024, Elmore was interviewed by attorneys Melissa Atkins and Thomas Hearns from Obermayer. **Pl. Ex. 1, Elmore Dep. 218:10-13**.

162.    On January 5, 2024, Mr. Takita forwarded a text message from Brian Galloway, a member of the Township Board of Supervisors, to Thomas Hearn at Obermayer instructing him to expand the investigation into Mr. Elmore.

Fri, Jan 5 at 2:52 PM

Matt Takita



Matt I know I said we want the report completed quickly but... make this clear to Obermeyer.
It can't be rushed. We a need a thorough laying out of the facts of these two officers actions. Were there any policy or laws broken?  Is this an isolated incident or is this another example of their course of conduct? And we expect a clear recommendation that we can follow for each officer. Obermeyer is not to be influenced by the opinion of anyone from the township.
Let me know that you've conveyed this to Obermeyer.

From a supervisor

**Pl Ex. 75, 1/5/2024 Text Message from Matthew Takita to Thomas Hearn forwarding Galloway's original text message to Takita**.

163.    Mr. Galloway admitted he requested the investigation be expanded without discussing it with his fellow Board of Supervisors. **Pl. Ex. 8, Galloway Dep. 77:20-78:10**.

164. The Board would have had to vote to expand Obermayer's investigation, but the Board never voted to expand the investigation into Elmore in January 2024. **Pl. Ex. 6, Boraski Dep. 93:23-94:12**.

165. Similarly, according to Mr. Takita, the investigation by Obermayer in January 2024 was about the canines; it shouldn't have been about any other previous issue or any other previous write-ups that Elmore had because his record was clear. **Pl. Ex. 5, Takita Dep. 176:7-12**.

166. Thomas Hearn, the attorney at Obermayer who received the text message, was supposed to be a neutral party, yet he responded with a heart emoji to the request to expand the investigation. **Pl. Ex. 75, 1/5/2024 Text Message from Matthew Takita to Thomas Hearn forwarding Galloway's original text message to Takita**.

167. Despite not having Board approval, Melissa Atkins and Thomas Hearn expanded the report to include allegations that Elmore had previously been cleared of. **Pl. Ex. 11, Obermayer Report.**

168. Nowhere in the Obermayer final report does it say Mr. Elmore took a bribe from Mr. Kent. **Pl. Ex. 11, Obermayer Report**.

169. Although Elmore had been cleared of Whitney's allegation of overtime theft on February 25, 2022, the Obermayer lawyers accuse Elmore of time theft in the report. **Pl. Ex. 11, Obermayer Report, pg. 17; See ¶73, 74**.

170. While the Obermayer report admits that the Township did not ask them to investigate Elmore regarding the Vote of No Confidence, it goes into detail, blaming Elmore for the Vote of No Confidence. **Pl. Ex. 11, Obermayer Report, pg. 18-19.**

171.     While Elmore was never disciplined for participating in the Vote of No Confidence in Chief Whitney in April 2022, the Obermayer lawyers accuse him of wrongdoing for participating in that process, along with 40 other officers who voted that they had no confidence in Chief Whitney. **Pl. Ex. 11, Obermayer Report**, **pg. 18-19**.

172.     John Palmer, a Board of Supervisors member, was asked whether the vote of no confidence against Whitney is grounds to terminate Elmore, and he responded, "Absolutely not." **Pl. Ex. 7, Palmer Dep. 87:2-4.**

173.     Although Elmore's record was cleared of harassment for wearing the shirt with Chief Whitney's face on it, the Obermayer report goes into detail, accusing Elmore again of inappropriate conduct. **Pl. Ex. 11, Obermayer Report**, **pg. 19-20.** *See* **¶106-110.**

174.     The Obermayer report also includes a summary of what Lt. Clark shared with the investigators about Elmore's arrest of Mr. Bell in 2022. **Pl. Ex. 11, Obermayer Report**, **pg. 9-11.**

175.     Lt Clark attended Mr. Bell's February 2023 preliminary hearing instead of Elmore, because Elmore was on administrative leave at the time. **Pl. Ex. 11, Obermayer Report**, **pg. 11.**

176.     The Obermayer report made every credibility finding against Elmore and Langan, and in favor of Chief Whitney and Lieutenant Clark. **Pl. Ex. 11, Obermayer Report**.

177.     The report criticized Elmore's conduct in the Bell arrest, in particular, what he claimed was Elmore's failure to obtain from Bell mitigating information at the time of the incident. **Pl. Ex. 11, Obermayer Report**.

178.     Obermayer, however, made no attempt to interview Bell. **Pl. Ex. 11, Obermayer Report**.

179.	Obermayer did not interview Kent. **Pl. Ex. 11, Obermayer Report**, **Pg. 5.**

180.	Instead of interviewing Kent, Obermayer used, in its report, the hearsay accounts of Clark and Sergeant Reeves from a visit they had made to Kent on December 1, two weeks before Obermayer was retained. **Pl. Ex. 11, Obermayer Report**, **pgs. 9-13.**

181.	Clark and Reeves did not take written notes. Instead, according to Obermayer, they attempted to tape record the conversation with Kent, but that Kent declined to be tape recorded unless Chief Whitney himself was present. **Pl. Ex. 11, Obermayer Report**, **pg. 9-13.**

182.	Obermayer made no attempt to ever see the dog, review its papers or make any attempt to ascertain whether it had value when it was given to Elmore. **Pl. Ex. 71, 6/4/2025 Elmore's Arbitration Part I Melissa Atkins, Esq. at 40:20-24**.

183.	Kent's letter states he gave the dog to Elmore in order to find it a "forever home" without an intention that it would become a police dog. **Pl. Ex. 11, Obermayer Report; Pl. Ex. 38, Kent Letter**.

184.	Obermayer's report to the Supervisors alleged that Elmore did not show up for his interview with Obermayer attorney investigator Brian Rhodes, though the documents plainly show that Elmore did show up, was emailing Rhodes trying to find him at the location, and that Rhodes left the building and later apologized to Elmore for the confusion. **Pl. Ex. 11, Obermayer Report; Pl. Ex. 76, Elmore's Email Correspondence with B. Rhodes.**

185.	Nowhere in the Obermayer report does it state that Mr. Kent provided Elmore with any AKC validation for the dog. **PL. Ex. 11, Obermayer Report**.

186.	On February 15, 2024, Obermayer emailed the final Report of its K-9 Investigation to the Board of Supervisors. **Pl. Ex. 77, 2/15/2024 Email from Obermayer to the Board of Supervisors**.

187.    The next day, February 16, 2024, Attorney Melissa Atkins emailed the K-9 Investigation report directly to Chief Whitney. **Pl. Ex. 78, 2/16/2024 Email from Atkins to Whitney**.

188.    On February 28, 2022, the Township terminated Elmore. The termination letter, written by Obermayer, states, "after carefully reviewing your Loudermill Response…" which was Elmore's written response to the allegation against him. However, Jeffry Boraski, a member of the Board of Supervisors, testified that the only item the Board discussed at the meeting at which it decided to terminate Elmore was the Obermayer report. **Pl. Ex. 79, 2/28/2024 Termination Letter**; **Pl. Ex. 6, Boraski Dep. 48:4-19.**

189.    Mr. Dence, the Chair of the Board of Supervisors, did not vote to terminate Elmore. **Pl. Ex. 4, Dence Dep. 96:11-15.**

190.    Mr. Dence was of the opinion that "Nelson Whitney weaponized Melissa Atkins against anyone that didn't toe the line with him. He manipulated her, and she was doing everything that he wanted her to do to try to discipline everybody he didn't like." **Pl. Ex. 4, Dence Dep. 57:20-25**.

191.    While Jeffry Boraski, a member of the Board of Supervisors, voted to terminate Mr. Elmore, he testified that ever since, he doesn't believe he made the right decision. **Pl. Ex. 6, Boraski Dep. 37:22-38:4**.

192.    Mr. Boraski believes he made the wrong decision because "I think that that firm Obermayer I believe was just doing the will of Nelson [Chief Whitney]." **Pl. Ex. 6, Boraski Dep. 38:5-10.**

193.    Mr. Boraski believes:

21 A I believe that her -- what we hired Obermayer

to do was to work on behalf of the taxpayers and the Board of Supervisors and I believe what transpired over the years was her working for Nelson. I believe that he had direct contact with her. I believe that Nelson could go right to -- I'm not even gonna say Obermayer because the only person's name I remember is Melissa Atkins and I will remember that name forever because of the way she acted in that Executive Session and -- but I believe he had full access to her and I think that that was leading to a path of decisions that were being made or things that were being presented to the Supervisors that I look back at now and were -- that was not right or maybe not truthful or probably definitely not truthful. And this is coming from me, maybe the other Board Supervisors don't feel the same way or maybe they believe the things she was saying, but I -- after that night I didn't, I didn't believe the things she was saying.

**Pl. Ex. 6, Boraski Dep. 38:21-39:13**.

194.    According to Melissa Atkins, Chief Whitney was her "client." **Pl. Ex. 9, Atkins Dep Part 1 135:24-136:9.**

195.    When Whitney was the decision-maker for any officer discipline, Obermayer was fully involved. **Pl. Ex. 2, Whitney 122:6-9**.

196.    Melissa Atkins represented to the Board of Supervisors that Elmore took a dog from Mr. Kent for use in Township purposes. **Pl. Ex. 6, Boraski Dep. 90:9-22**.

197.    Melissa Atkins did not inform the Board that, because of the dog's physical health, it could not serve as a police dog. **Pl. Ex. 6, Boraski Dep. 91:3-5**.

198.    Melissa Atkins did not inform the Board that the dog Elmore got from Mr. Kent was his family dog. **Pl. Ex. 6, Boraski Dep. 91:10-14**.

199.    Mr. Boraski did not know there were two dogs that Elmore obtained from Mr. Kent. **Pl. Ex. 6, Boraski Dep. 93:2-5**.

200.     Mr. Boraski also wasn't told that Mr. Kent did not provide Elmore with any AKC validation for the dog, and if he had known this, he would not have voted to terminate Elmore. **Pl. Ex. 6, Boraski Dep. 93:6-20.**

201.     If Boraski knew that the dog's health prevented it from serving the township and the dog was Elmore's family dog, he would not have voted to terminate Elmore. **Pl. Ex. 6, Boraski Dep. 91:18-92:7**.

Respectfully submitted,
**HARDWICK BENFER, LLC**

*/s/ Tiffanie C. Benfer*
Tiffanie C. Benfer (PA 202096)
tbenfer@hardwickbenfer.com
2003 S. Easton Road
Doylestown, PA 18901
(215) 230-1912

**Mark Risk, PC**
*/s/ Mark Risk*
Mark Risk (Pro Hac Vice /NY 1980474)
mdr@mrisklaw.com
60 East 42nd Street
47th Floor
New York, NY 10165
(212)682-4100
*Attorneys for Plaintiff*

Dated: July 20, 2026