## Page 1

IN THE UNITED STATES OF DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
NO. 2:25-CV-02076-JHS

EDWARD ELMORE,            )
                          )
                          )
        Plaintiff,        ) DEPOSITION OF:
                          )
    v.                    ) JOHN W. PALMER
                          )
FALLS TOWNSHIP,           )
                          )
                          )
        Defendant.        )
_____   )

*** CONFIDENTIAL ***

TRANSCRIPT of the stenographic notes of the proceedings in the above-entitled matter, as taken remotely via Zoom by and before SANDRA A. ROBERTSON, a Certified Court Reporter and Notary Public of the State of New Jersey, held remotely, on May 26, 2026, commencing at 5:01 p.m.

HUDSON COURT REPORTING & VIDEO   (732) 906-2078

## Page 2

REMOTE
APPEARANCES:

HARDWICK BENFER, LLC
BY:  TIFFANIE C. BENFER, ESQ.
2003 S. Easton Road
Suite 308
Doylestown, Pennsylvania 18901
(267) 810-0192
TBenfer@hardwickbenfer.com
Attorneys for the Plaintiff
Edward Elmore


MARK RISK, PC
BY:  MARK RISK, ESQ.
60 E. 42nd Street
New York, New York 10165
(212) 682-4100
Attorneys for the Plaintiff


MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, P.C.
BY:  JAHLEE HATCHETT, ESQ.
2000 Market Street
Suite 2300
Philadelphia, Pennsylvania 19103
(215) 575-2789
JJHatchett@mdwcg.com
Attorneys for the Defendant
Falls Township

Also Appearing Via Zoom:

    EDWARD ELMORE

## Page 3

INDEX

WITNESS:                              PAGE:

BRIAN GALLOWAY
    By MS. BENFER                        4

                *****


            EXHIBITS

NO.      DESCRIPTION              PAGE

(No exhibits marked.)

                *****

## Page 4

PROCEEDINGS

JOHN W. PALMER, after having been duly sworn, testified as follows:

EXAMINATION

BY MS. BENFER:

Q.    Good evening, Mr. Palmer. My name is Tiffany Benfer. I represent Mr. Elmer along with my cocounsel, Mark Risk, who is also on the Zoom. Mr. Elmore is here too. You don't see his face like you don't see Mr. Hatchett's face there are multiple people here.

Before we get started, I just want to ask you, have you ever had your deposition taken before?

A.    No.

Q.    Okay. Not just because I am going to go through some instructions that helps this process go smoothly and our objective is to make the court reporter's job as easy as possible. Because in this deposition, I am sure you know I am going to be asking you questions and the court reporter is going to be taking down my questions and then you're going to be -- as well as your answers, okay?

A.    Sure.

Q.    Okay. So let me just give you some

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

Exhibit 7

Page 85

Officer Elmore, theft of time for K9 training." Do you see that?

A.    Okay.

Q.    And so they go into this whole thing and they rehash it. This issue has already been put to rest, hasn't it?

A.    I'm not sure. This document came out after the other one was finished?

Q.    A whole year later.

A.    Okay. Keep going down. What are the other bullet points?

Q.    The next one is vote of no confidence against Chief Whitney.

A.    Okay. That's a whole -- that's a whole nother thing.

Q.    The board has a right -- I'm sorry, not the board. The union has a right to do a vote of no confidence?

A.    Absolutely. It's very -- it's very uncommon and it was a split vote by marginal numbers.

Q.    What was?

A.    From what I understand.

Q.    I will represent to you there's been evidence that there's 22 officers who voted no

Page 86

confidence.

MR. HATCHETT: That is not a question.

Q.    Are you aware of that that 22 officers voted?

MR. HATCHETT: Objection to form of the question.

Q.    I will rephrase. Mr. Palmer, are you aware that in 2022 the PAFT took a vote of no confidence of Whitney and 22 officers voted for support of the vote of no confidence?

A.    Can you tell me how many officers are sworn at that time? Because I believe we are at 53. You tell me 22.

Q.    Actually I will represent to you that there's been testimony there are not 53 at this time. In fact, there are at least ten to fifteen officers short right now because --

A.    You are talking now.

Q.    Are you aware of that?

A.    Of course. I'm the supervisor. I pay the bills. Of course. Absolutely. We are doing everything in our power to, you know, get people on the street. It's an epidemic nationwide. When have you ever seen we are hiring putting on

Page 87

their cars.

Q.    The vote of no confidence against Whitney, is that a reason to term fate Mr. Elmore?

A.    Absolutely not.

Q.    So that was -- was that taken into consideration in the decision to terminate Mr. Elmore?

A.    I have no -- I haven't read this. I don't know. I gotta go back to look at it. What's the next one?

Q.    Let me ask you this. Did you take the vote of no confidence into consideration when you voted to terminate Mr. Elmore?

A.    I can't recall.

Q.    The next one is officers insubordination and inappropriate conduct.

A.    I'm not sure what the insubordination was or inappropriate deduct.

Q.    They reference it happened in 2022.

A.    I remember there was some verbal altercation during a meeting. This is what that is with the chief where an outfit had the chief's picture on him. I don't know if that's what this is about.

Q.    I believe it is. I believe that in

Page 88

August -- I will represent to you there was a disciplinary that was also investigated by Mr. Harran. Did you know that?

A.    Could be.

Q.    And that Mr. Elmore -- there was a recommendation for five-day suspension. Mr. Elmore grieved it and that two was set aside so as of the end of -- beginning of August of 2023 there was no discipline brought against Mr. Elmore for this, wearing a T-shirt. Are you aware of that?

MR. HATCHETT: Objection to form of the question.

You can respond, sir.

A.    I can't recall, but if you're asking me if I think it's appropriate that he wore that, that's a whole nother --

Q.    I am not asking if it's appropriate because that was already discipline. That was taken care of almost a year before --

A.    That wasn't disciplined. Just because discipline wasn't brought forth doesn't mean it was disciplined. That doesn't make any sense of me. Just because there was no discipline brought forth, how was that no discipline?

MR. HATCHETT: Can I get --

**New York**
**212-273-9911**

**Hudson Court Reporting & Video**
**1-800-310-1769**

**New Jersey**
**732-906-2078**

Exhibit 7