IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------------

EDWARD ELMORE,                         :

     Plaintiff,                        :        No. 2:25-cv-02076-JHS

     v.                                :

FALLS TOWNSHIP,                 :

     Defendant.                        :

-------------------------------------------------------------------

## AFFIDAVIT OF EDWARD ELMORE

I, EDWARD ELMORE, hereby affirm that all the facts set forth below are true and correct:

1. I am the plaintiff in this action. I am familiar with the facts and circumstances as set forth below, and I make this affidavit in opposition to Defendant Falls Township's motion for summary judgment. This affidavit will set forth certain relevant facts that were not elicited by Falls Township in my deposition testimony.

2. I take pride in the fact that, over 21 years of service as a Falls Township police officer, from 2000 until 2021, I was never the subject of disciplinary proceedings. After Nelson Whitney became the Chief of Police in January 2021, that changed dramatically. Chief Whitney believed that officers who asserted their rights to fair treatment were disloyal to the department and should be terminated. In my case, speaking up for the rights of those officers turned me from an insider, who had been invited to serve on the Department hiring committee in 2021, to an outsider who was the subject of repeated attempts to terminate me beginning in 2022 and 2023, and which finally succeeded in early 2024.

1

Exhibit 10

**Fatal Shooting in August 2021**

3.    Because it is relevant to Chief Whitney's attempts to malign my record and my service, I should also say on August 29, 2021, I was required to discharge my firearm in the line of duty, resulting in the fatal shooting by me of a person who posed a threat to me and to a fellow officer during a domestic call in a residential basement. Per department policy, I was placed on a short leave of absence, the matter was investigated and my conduct was judged to have been completely appropriate. While this incident was very upsetting to me, I know what I did was necessary under the circumstances in that moment. It has never been suggested that I behaved inappropriately in connection with the fatal shooting.

4.    Within months thereafter, however, in February 2022 Chief Whitney's unrelenting assault on my record and my character began. It was intended to push me out of the Department and end my career. It is especially difficult for me to have my professionalism as an officer questioned so soon after I had dealt with the extremely challenging circumstances of the shooting and its aftermath.

**My Protests About Employment Discrimination in February 2022**

5.    In February 2022, I became the president of our local union, the Police Association of Falls Township ("PAFT"). There were about 50 officers in the union. I agreed to take the job when no one else came forward, and I committed to myself to do it conscientiously.

6.    On or about February 24, 2022, I spoke with Lieutenant Henry Ward. We were out on a call related to a truck fire on Tyburn Road. Lt. Ward told me that Chief Whitney had "about five people" that he was targeting "to get rid of." He confirmed that it was the female officers, Steve Langan, and Bruce Rhodunda. He said that anyone who got in the Chief's way would be "collateral damage." Lieutenant Ward said that the Chief was a "dog with a bone and

2

Exhibit 10

he's not going to let it go." I understood this as a warning to me not to advocate for the protection of fellow officers whom Chief Whitney wanted to terminate. Lieutenant Ward gave me the clear impression that he intended to stay out of harm's way by doing what Chief Whitney asked of him.

7.      I met with Chief Whitney on February 25, 2022. I tried to talk to him about the increasing use of disciplinary procedures against experienced police officers, many of whom were women, and others of whom were older. I criticized the use of administrative suspensions of officers. Administrative suspensions were supposed to be for mental health or unusual circumstances. Under Chief Whitney, administrative suspensions were being used to punish officers for disciplinary violations, which should have been subject to grievance and arbitration procedure under the collective bargaining agreement. Chief Whitney told me to let the police officers know that they should not be worried, that he was only interested in the officers that had made EEO-related claims against the Department, "but I have to make it look like I am being fair." I responded, "You have to *be* fair."

8.      During the February 25th meeting with Chief Whitney, he told me to "show me some case law," something he often said. I returned to him on March 9th and gave him a copy of the 14th Amendment to the US Constitution, attempting to show that he was depriving the officers of their procedural due process rights. In that meeting, I specifically mentioned what I thought was the disparate treatment of female officer Victoria Crosier and officers Steve Langan and Bruce Rhodunda, both of whom were over age 50. I challenged him again about the way he was treating these officers.

3

Exhibit 10

9.    It soon became clear to me that I had fallen out of favor with Chief Whitney for attempting to protect the rights of the other officers, and I was now on the list of officers who would be pushed out of the department.

### The Canine Training Day Incident of February 25, 2022

10.    Chief Whitney's attempts to terminate me started immediately after I began advocating about the treatment of the female and older police officers. He created a false narrative that I acted improperly during the K9 training day on February 25, 2022.

11.    I was a long-time officer in the K9 unit partnering with a dog named Monty, who lived with my family and me. Periodic training days were required.

12.    The K9 officers had a training day on February 25 with other municipalities. These trainings were co-scheduled with Bucks County, which ran quarterly scent-certification programs to qualify us for court testimony.

13.    On February 25, I arrived at the Falls Township Police Department at 3:00 AM to begin the day with four hours of approved overtime before my regular shift. Shortly after 7 a.m., when my regular shift began, I went to Bristol Township with two other K9 officers, Brian Fisher and Tom Lundquist, to prepare our dogs for the County certification program.

14.    Before 9 a.m., we drove to the site where the scent certification would take place. I had to arrive before the session began because my job included bringing the explosives that would be used to test the canine dogs.

15.    The certification involved each officer running a course with their instructor, lasting 10 to 20 minutes per dog, depending on the dogs' accuracy. The County training lasted until not quite 12:30 p.m.

4

Exhibit 10

16.     We were supposed to conduct additional K9 training with the Bristol Township K9 officers after lunch, but we could not remain at the County training site, and the Bristol officers had failed to arrange a site for the afternoon training. Because of the rain, we could not conduct scent training outdoors and needed a suitable building. The Bristol K9 Officers directed us to break for lunch. During and after lunch, we each exhausted our contact lists of commercial properties with which we had relationships. None could accommodate us on this short notice. I went back to Falls Township headquarters to return the explosives, then stayed in the building to do other tasks, including meeting with Chief Whitney and then after with Lt. Clark. Video footage from security cameras confirmed that I returned to the Falls Township Police Department building after the training.

17.     Bucks County reimburses participating municipalities for up to four (4) hours on a training day for the time officers spend on canine training. Apparently, someone from Falls Township submitted a request to Bucks County for reimbursement of eight (8) hours of overtime for me, Fisher, and Lundquist. When the County reported back that the scent training was not eight hours long, Chief Whitney instructed Lt. Ward to conduct a formal "investigation" into whether we had "stolen time." The issue was really whether the officers who went home after the training program without spending a full eight hours in training had done something wrong. Not surprisingly given my prior conversation with Lt. Ward on February 24th, Lt. Ward concluded not only that we had gone home too early, but also that we had lied during the investigation, which required the immediate termination of our employment.

18.     Unlike the other two officers, I was not working an overtime shift for the training day. I had worked overtime before the training day from 3:00 AM to 7:00 AM, and the training day was a regularly scheduled shift for me. I never made an overtime request at all for the

Exhibit 10

training day activities. I came back to headquarters in the afternoon. The other 2 K9 officers have never been disciplined for this training day and are still as, of this date, employed by Falls Township as active duty police officers.

19. While Chief Whitney was out on administrative leave between late April and September, discussed below, the Department had zero interest in pursuing Chief Whitney's allegations of wrongful conduct by the K9 officers on February 25.

### The Vote of No Confidence

20. In April 2022, our union PAFT took a vote of "no confidence" in Chief Whitney. It passed overwhelmingly, with 40 to 8 (plus one abstention). I did not initiate the proposal, but after the vote I prepared, along with PAFT vice president Raymond Fanelli and the union's lawyer, a letter to the Township Supervisors attempting to explain the concerns of the union members that motivated the vote. We submitted it to the Supervisors on April 25. The Board responded by placing Chief Whitney on administrative leave, on which he remained until September 12, 2022.

21. The Township now claims that I orchestrated the no-confidence vote so that I would not be terminated in connection with the allegations regarding the K9 training day. I did not orchestrate the vote; I did not know as of April 25 that Lt. Ward had recommended to Chief Whitney that I be terminated. Moreover, the Department continued to function under Lt. Ward as Acting Chief during Chief Whitney's leave, such that the Chief's leave should not have impeded any legitimate discipline matters from proceeding.

### Reported Discrimination by Chief Whitney to Township Manager and Assistant Township Manager on November 15, 2022

22. On November 15, 2022, I had a meeting with Township Manager Matthew Takita and Assistant Township Manager Rich Dippolito to discuss various pending issues and

6

Exhibit 10

grievances, including the investigation of Officer Crosier. I was joined by Sgt. Raymond Fanelli at that meeting. Among the issues we raised with Mr. Takita and Mr. Dippolito were the ongoing unfair treatment of Officer Crosier because she was a woman.

## Lt. Langan's November 2022 Loudermill Hearing

23. In its motion papers, Falls Township alleges for the first time that, when I appeared as president of my local union in connection with the Loudermill disciplinary hearing of Officer Steve Langan on November 23, 2022, I distributed documents containing emails exchanged between the Township Solicitor's office and the Board of Supervisors. I did not.

24. On November 21, 2022, I attended the Loudermill hearings for Officers Steven Langan and Victoria Crosier as their union representative, wearing a shirt featuring a picture Chief Whitney asked me to take in 2020 of him posing next to Derek Chauvin.

25. As the President of the Union, I provided union members the opportunity to review documents from the Union's own file regarding a legal matter involving the Union. More specifically, the Union and the Township had been sued by two officers for defamation. The two officers had been accused of misappropriating money from the Union. I shared documents with fellow officers to reassure them that their Union's funds had not been improperly taken by the former officers.

## The Rigging of the Promotional Process

26. In the spring of 2023, the Falls Township Police Department conducted a promotional process. The department's promotional process consists of three elements: Objective Examination (55%), Performance Evaluation (10%), and Oral Examination (35%), which together constitute the applicant's overall score.

7

Exhibit 10

27. Throughout each step in the process, I reached out to Matthew Takita and confirmed that I was permitted to take part in the promotional process while out on administrative leave.

28. On April 27, Chief Whitney issued a memo to all the candidates listing their performance ratings a/k/a Performance Evaluation Scores. My score was a 51%. I found out that my score had reduced. I asked for my evaluation completed by my supervisor, Sgt. Anthony Fanelli on April 19, 2023, and saw that he gave me a score of 90%. This dramatic reduction took me out of the running for a promotion.

29. This retaliation was not only for my advocacy and opposition to discriminatory practices against women and older officers but also constituted age discrimination itself. The four officers who ultimately received the promotion to corporal (James Szanboti, Ryan Murphy, Alexander Sansome, and Nicholas Philippe) were all under 35 years old. All of them had significantly lower scores on the written exam than I did. All of them had lower performance ratings than the initial rating I had been given. (Three of the four had their performance evaluation scores increased by Chief Whitney.) At the time they officially received their promotion in July 2023, I knew that all of them were under 35. I was 46 at that time, so the age discrimination factor was unmistakable. Thus, the process that was supposed to be objective was totally manipulated against me.

### The Township's 2023 Investigation of My Complaint of Discriminatory Hiring Practices

30. In connection with my claim that the Department was engaged in hiring discrimination in 2021, I was questioned by the Obermayer attorney in September 2023 about the discriminatory hiring practices and was shown the revised interview scoring form that Lt. Clark had directed me and Sergeant A. Fanelli to create in August of 2021. Obermayer did not have the original

8

Exhibit 10

interview scoring forms that had been filled out by the interview panel. [Is this out of sequence?? I made little change to make it less confusing.

### The 2022 Arrest of Lawrence Bell

31.     The aspect of the July 2022 arrest that was not adequately covered in my deposition concerns the ugly allegation by Chief Whitney and his lawyers at Obermayer that I mishandled an arrest on Robert Kent's property that occurred a full year earlier, in July 2022. I later rescued two dogs from Mr. Kent. However, the implication, supported by nothing, was that giving me the dog named Oakley was an after-the-fact payment of a bribe or gratuity for making an arrest on Mr. Kent's property a full year earlier. There has been no assertion that receiving the dog known as Freya was a bribe or gratuity. The only difference between the two dogs is that I refused to give Oakley to the Township when Chief Whitney asked for it. In my 24 years of service as an officer, my conduct in my official capacity has never before been questioned in this manner.

32.     Anyone who knows anything about dogs knows that caring for them costs significant time and money, particularly for food and veterinary care, which I personally incurred when I rescued the two dogs from Mr. Kent.

33.     Mr. Bell was a union organizer. On July 26, 2022, he appeared on the property of Mr. Kent, who operated a landscaping business. An argument ensued over whether Mr. Bell had the right to be on the property, and the police were called. I was dispatched to the property. When I arrived, I worked to de-escalate the situation and reduce the risk of violence. I ultimately got Mr. Bell to leave the premises. I charged him with simple assault, defiant trespass, terroristic threats, and disorderly conduct. Mr. Kent said that Mr. Bell had hit his arm and struck a visor that Kent was wearing, knocking it downward into his eyes and blurring his vision. At the scene,

9

Exhibit 10

I reviewed video surveillance of what had transpired before I arrived. When I spoke to Mr. Bell at the scene, he did not assert any claims of his own. The only thing he wanted to talk about was his legal right to be on Mr. Kent's property as a union organizer.

34.    The original affidavit of probable cause would have been generated from the Falls Township Police Department records management system. It is signed, dated, and given to the clerk at the district court on the day that I wrote the report. The discussion I had with Mr. Bell about his right to be on the property, which I noted in my report, was unrelated to the charges against him.

35.    The first time that Mr. Bell appeared in court for his preliminary hearing, I was present. Mr. Bell came to court with a lawyer. They said -- for the first time -- that Bell had some countercharges that he wished to pursue. I referred him to the Assistant District Attorney who was handling the matter. The ADA asked to postpone the preliminary hearing so he could investigate Mr. Bell's allegations against Mr. Kent. An investigation into all charges was conducted, and a new preliminary hearing date was set. After the investigation, none of the original charges I filed were altered, and none of Mr. Bell's counterclaims resulted in the DA's office filing any charges on his behalf.

36.    I was on leave of absence on the date Mr. Bell's preliminary hearing occurred, and Lieutenant Clark attended on behalf of the Falls Township Police Department. Mr. Bell pleaded guilty to the charges against him, at a reduced grade. Lt. Clark expressed no concern about any of this. Then, nine months later in November 2023, Chief Whitney claims that he and Lieutenant Clark were suddenly troubled by this arrest.

Exhibit 10

BASED ON THE FOREGOING, I respectfully request that the Court deny Defendant Falls Township's motion for summary judgment in its entirety.

I declare under penalty of perjury that the foregoing is true and correct.

EDWARD ELMORE

Dated: July 20, 2026

11

Exhibit 10