

# PERFORMANCE EVALUATION
## *POLICE OFFICER*
### APPENDIX A

| EMPLOYEE: last name, first name, middle initial | BADGE #: | EMPLOYEE RANK/POSITION | DATE OF HIRE: dd/mm/yr | Years of Service: |
|---|---|---|---|---|
| Elmore, Edward | 084 | Police Officer | 13/01/2000 | 23 |

| EVALUATION PURPOSE: | ☐ Annual  ☐ Probationary  ☐ Rater Change  ☐ Assignment Change | RATING PERIOD | FROM 01 / 01 /2023 | TO 10 / 04 /2023 | ASSIGNMENT/DIVISION Patrol |
|---|---|---|---|---|---|

| NAME OF RATER (IMMEDIATE SUPERVISOR): | RATER SIGNATURE: | DATE: |
|---|---|---|
| | | |
| NAME OF SENIOR RATER (LIEUTENANT): Christopher Clark | SENIOR RATER SIGNATURE: | DATE: 28/04/2023 |
| NAME OF REVIEWER (CHIEF OF POLICE): Nelson Whitney, II | REVIEWER SIGNATURE: | DATE: 28/04/2023 |

PERFORMANCE CATEGORY and OVERALL ANNUAL RATINGS-Assign a rating for each criteria standard within a performance and for the overall category rating; overall ratings are determined by quantity of measurement standards earned for the descriptors within the category.

EXCEEDS EXPECTATIONS [EE]: Consistently accomplishes assigned tasks and demonstrates specific competencies needed for the criteria standard above the expectations of the supervisor. Point Allocation=3

MEETS EXPECTATIONS [ME]: Consistently accomplishes assigned tasks and demonstrates specific competencies needed for the criteria standard at the expectations of the supervisor. Point Allocation=2

NEEDS IMPROVEMENT [NI]: Inconsistently accomplishes assigned tasks or fails to demonstrate specific competency for the criteria standard.    Point Allocation=1

UNSATISFACTORY [U]: Consistently fails to accomplish assigned tasks and/or fails to demonstrate specific competency for the criteria standard.  Point Allocation =0

| | Criteria | EE | ME | NI | U |
|---|---|---|---|---|---|
| **I. WORKPLACE QUALITIES** | a. Adheres to appearance, grooming and dress guidelines | ☐ | ■ | ☐ | ☐ |
| | b. Timeliness/Dependability | ☐ | ■ | ☐ | ☐ |
| | c. Duty, care and proficient use of equipment | ☐ | ■ | ☐ | ☐ |
| | d. Commitment to self-Improvement/officer proficiency requirements | ☐ | ■ | ☐ | ☐ |
| **II. Job Competencies** | a. Effectively communicates in written and oral form | ☐ | ■ | ☐ | ☐ |
| | b. Maintains proper self-control in all situations | ☐ | ☐ | ☐ | ■ |
| | c. Exercises safe vehicle operation | ☐ | ■ | ☐ | ☐ |
| | d. Employs proper application and use of force | ☐ | ■ | ☐ | ☐ |
| | e. Compliance and Proficiency of department policies, procedures and directives | ☐ | ☐ | ■ | ☐ |
| | f. Knowledge of Criminal Law, Case Law, Rules of Criminal Procedure | ☐ | ■ | ☐ | ☐ |
| | g. Knowledge of Motor Vehicle Law | ☐ | ■ | ☐ | ☐ |
| | h. Knowledge of local ordinance | ☐ | ■ | ☐ | ☐ |
| | i. Knowledge of local geography | ☐ | ■ | ☐ | ☐ |
| | j. Effectively utilizes available investigative databases | ☐ | ☐ | ■ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| **III. PERFORMANCE** | a. Engages in self-initiated activity/targeted enforcement | ☐ | ☐ | ■ | ☐ |
| | b. Effectively engages in problem solving with minimal supervision | ☐ | ■ | ☐ | ☐ |
| | c. Exhausts all available investigative leads | ☐ | ■ | ☐ | ☐ |
| | d. Performs all aspects listed within job description | ☐ | ■ | ☐ | ☐ |
| | e. Effectively employs sound interview and interrogation techniques | ☐ | ■ | ☐ | ☐ |
| | f. Commits to extra duty & special assignments | ☐ | ■ | ☐ | ☐ |
| | g. Engages in officer safety practices | ☐ | ■ | ☐ | ☐ |
| | h. Adheres to case management, documentation and submission requirements | ☐ | ■ | ☐ | ☐ |
| | i. Engages in sound evidence preservation, collection and documentation practices | ☐ | ■ | ☐ | ☐ |
| | j. Exercises good judgment/discretion in enforcement | ☐ | ■ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| **IV. HUMAN RELATIONS** | a. Committed to the vision, mission and goals of the organization | ☐ | ☐ | ■ | ☐ |
| | b. Exudes tactful, courteous, professional demeanor with citizens and detainees alike | ☐ | ■ | ☐ | ☐ |
| | c. Fosters positive relationships with co-workers, Township staff & Criminal Justice Community | ☐ | ☐ | ☐ | ■ |
| | d. Embodies Community Policing/Victim Advocacy | ☐ | ■ | ☐ | ☐ |
| | e. Demonstrates leadership & team-building skills | ☐ | ☐ | ☐ | ■ |
| | f. Accepts feedback and supervisory instruction | ☐ | ☐ | ☐ | ■ |

| V. PERSONAL QUALITIES | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Positive Attitude | 1 | Fair judgement | 1 | Rater shall strike out any scoring point for any quality not exhibited during the rating period. | X 3 = | X2 = | X1 = | |
| | Loyal to Organization | 1 | Civic Minded | 1 | | | | | |
| | Accepts Responsibility | 1 | Self-Confident | 1 | | | | | |
| | Self-Motivated | 1 | Self-Discipline | 1 | | | | | |
| | Efficient | 1 | Command Presence | 1 | | | | | |

Exhibit 23

Elmore_000061

| Appraisal Scoring Range | | | | | | | Overall Numerical Performance Score | |
|---|---|---|---|---|---|---|---|---|
| 80-100 Exceptional    73-79 Good        68-72 Satisfactory        60-67 Needs Improvement    0-59 Unsatisfactory | | | | | | | 51 | |

| Pistol Score | | Rifle Score | | Total Calls | 0 | Total Traffic Stops | 0 |
|---|---|---|---|---|---|---|---|
| Plt. Avg. Score | 240.5 | Plt. Avg Score | | Plt. Average | 142 | Plt. Average | 32 |
| Dept. Avg. Score | 241 | Dept. Avg. Score | | Division Average | 145 | Division Average | 14 |
| Total Tr Citations | 0 | Total Arrests | 0 | Total Nt Citations | 0 | Total Sick Leave (Hrs.) | 0 |
| Plt. Average | 22 | Plt. Average | 8 | Plt. Average | 2 | Plt. Average | 35 |
| Division Average | 13 | Division Average | 5 | Division Average | 2 | Division Average | 72 |

ADDITIONAL DUTIES AND ASSIGNMENTS:

PRINCIPAL STRENGTHS OF EMPLOYEE:

PRINCIPAL WEAKNESS(ES) OF EMPLOYEE/AREAS FOR IMPROVEMENTS:

ACTION PLAN FOR EMPLOYEE:

EMPLOYEE COMMENTS:

I hereby acknowledge that I have read and have been provided with a copy of the performance evaluation. I've had the opportunity to discuss the evaluation with my raters and understand that I may offer further comment in the Employee Comment section of this form prior to final signature by the Reviewer.

Employee Signature: _____     Date: _____

Original-Records (Employee Performance Evaluation Folder) Copy-Employee

Exhibit 23                                           Elmore_000062

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 530-2023-07610 |

Pennsylvania Human Relations Commission (and EEOC)

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) **Edward Elmore** | Home Phone (Incl. Area Code) **215-669-2471** | Date of Birth **01/07/1977** |
|---|---|---|

| Street Address **10 Beverly Hills Drive** | City, State and ZIP Code **Ivyland, PA 18974** |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name **Falls Township Police Department** | No. Employees, Members **15+** | Phone No. (Include Area Code) **215-949-9100** |
|---|---|---|

| Street Address **188 Lincoln Highway** | City, State and ZIP Code **Fairless Hills, PA 19030** |
|---|---|

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es).):*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ OTHER *(Specify below)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest

October 2022 - Continuing

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am employed as a police officer by Falls Township in Bucks County.

On October 6, 2022, I met with Matthew Takita, the Township Manager, and Rich Dippolito, the Assistant Township Manager. I informed them of discrimination in the police department's hiring process regarding female and minority officers. I shared with them the details below.

**Discrimination Reported to Township**

In spring of 2021, Sgt. Clark (since promoted to Lieutenant) asked me to be a part of the new hire interview board. The board consists of three people who interview candidates for the township's police department. The interview was one of multiple steps in the hiring process. At the time, the board consisted of myself, Sgt. Clark and Sgt. Anthony Finelli.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 9/20/23 _____ Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Exhibit 24

Elmore_000094

**Edward Elmore v. Falls Township Police Department**
**EEOC Complaint Cont.**

In the spring of 2021, the Falls Township police department sought to fill up to five officer positions.

At the time, Sgt. Clark asked me to join the interview Board, and he pulled me aside and shared with me his hiring plan. Sgt. Clark informed me that we would interview candidates on the existing candidate list even though the applicants scored lower than the initial cut-off point. He indicated that he was worried that the new county consortium list of potential candidates issued by the county would have too many females that would score too high on the list and, therefore, it would be difficult to skip over all the female candidates without making it look obvious. Sgt. Clark explained his plan was to hire one or two guys from the existing list to fill the vacancy before the new list came out, and the Township would avoid hiring a female police officer.

Sgt. Clark established the interview process that we followed. If any of the three interviewers vetoed the candidates, the candidate would not move on. All evaluations were written to reflect that veto rather than the actual opinions of the interviewers. So, after each batch of interviews was conducted, Sgt. Clark directed us to meet with him in his office and fill out the initial interview grading sheets. Consequently, the interview forms for each applicant were created to reflect the pre-determined outcome. No qualified female applicant got past the interview stage in the hiring process. Notably, one female candidate we rejected was hired by the Bensalem Police Department, and then the FBI, North Hampton Township hired another female candidate, and Upper Makefield Township hired the minority candidate.

On August 27, 2021, Sgt. Clark directed Sgt. A. Fanelli and me to meet with him in his office. He instructed us to create new evaluation forms for the interviews we had already done with him. He said the evaluation forms that we had previously filled out would not hold up in court because the grading system was arbitrary because it lacked any scoring key. The new forms included a scale showing what each score reflected. We sat in Sgt. Clark's office filled out new evaluation forms to reflect the score we previously assigned each candidate at the end of the interview cycle. Once again, the score assigned to each applicant was arbitrary. Subsequently, I learned that the new evaluations were provided to the EEOC in response to a subpoena in claim(s) brought by one or more female officers against the Township for discriminatory practices.

I also informed Takita and Dippolito that I had shared the discriminatory hiring process with some female officers who had pending discrimination complaints against the township for other acts of discrimination.

On October 11, 2022, Dippolito texted me and asked me to call him. I called him and spoke to him in further detail about how we had interviewed each female candidate with the understanding that they would not move past the interview in the hiring process.

I reviewed again with Dippolito that Sgt. Clark vetoed a male minority candidate from Morrisville. I shared with Dippolito that Sgt. A. Fanelli and I were surprised by Sgt. Clark's actions because we found the male minority candidate from Morrisville to be an outstanding candidate. I also told him that when we questioned Sgt. Clark's decision to veto this applicant, Sgt. Clark became livid, saying, "Fuck that turd we are not going to hire someone like him."

I also reviewed again with Dippolito that none of the candidates were scored during their interviews and that we (the three interviewers) later scored them as a group under Sgt. Clark's guidance. I explained that we started with the desired final score and worked backward. We agreed on scores that would exclude anyone Sgt. Clark didn't want to hire. Dippolito asked if I was comfortable with them (Takita and Dippolito) speaking with Sgt. A. Fanelli about what I shared with them.

Exhibit 24                                                    Elmore_000095

**Edward Elmore v. Falls Township Police Department**
**EEOC Complaint Cont.**

On October 18, 2022, I spoke to Cpl. Crosier's attorney by phone detailing some of the information I was aware of that would directly relate to her current EEOC complaint against the township. I shared with the attorney the hiring process Sgt. Clark had us follow.

On October 27, 2022, I emailed Takita and Dippolito, calling out the disparate treatment of female Officer Metterle.

**Retaliation for Reporting Discrimination**

### A. Retaliation – Light Duty

On September 16, 2022, I was injured on duty with a torn bicep tendon. On or around September 22, 2022, I was placed on IOD (injured on duty) status and placed on light duty. I worked light duty, night shift until November 7, 2022, approximately 7 weeks. However, on November 7, 2022, I was informed by Lt. Hank Ward (Sgt. Clark's Uncle) that the Township's Workers Comp Carrier, Delaware Valley Health Trust, had informed the Township that I could no longer work light duty. (Ex. A). This is simply not true. In a text message from the carrier's representative, I was told, "It is the employer who determines" whether it can accommodate the employee's work restrictions. (Ex. B). The decision not to allow me to work light duty any longer was an act of retaliation for reporting discrimination.

### B. Retaliation – Put on Administrative Leave

The Township scheduled a Loudermill hearing for female Officer Vicky Croiser on November 22, 2022. The hearing notice with the allegations came from Lt. Ward (Sgt. Clark's Uncle). On the day of the hearing, Officer Croiser provided a written statement to the Chief of Police with her response to the allegations against her. I attended her Loudermill hearing to demonstrate my support for her. She was facing a recommendation for termination. I wore a t-shirt to her hearing with a picture of Chief Whitney posing on duty in uniform on a street in Bristol Borough at a Black Lives Matter Rally next to a picture of the mug shot of Derek Chauvin, the convicted murderer of George Floyd. (Ex. C, includes the picture on the t-shirt).

Following the Loudermill hearing, I shared with fellow officers a flyer that calls out the racism and sexism in the police department. (Ex. C).

On the afternoon of November 22, 2022, at Chief Whitney's direction, Lt. Ward (Sgt. Clark's Uncle) emailed the Township Managers to report to them that he believed that I was crazy and dangerous. He alleged there is a need to take emergency action to secure K9 training aids because he "doesn't know what I'm thinking." He fostered this false narrative by directing a coworker to change all the locks for the training aids. Ofc. Fisher contacted me and informed me that Lt. Ward had directed him to change the locks.

On December 6, 2022, I received two memos from Chief Whitney, one dated December 5th and one dated December 6th. The memos state that I was facing termination for bringing attention to sexism and racism issues within the department.

On December 12, 2022, I received an email from Chief Whitney, placing me on administrative leave for bringing attention to sexism and racism issues within the department. (Ex. D). Chief Whitney also sent a mass email department-wide informing all my colleagues that I was placed on administrative leave. (Ex. E).

Exhibit 24                                                      Elmore_000096

**Edward Elmore v. Falls Township Police Department**
**EEOC Complaint Cont.**

On December 13, 2022, I received a memo from Chief Whitney outlining what I was prohibited from doing while out on Administrative Leave. (Ex. F). This administrative leave constituted disciplinary action per the Township's Internal Investigation Policy, the Collective Bargaining Agreement and was affirmed by a recent arbitration decision. (Ex. G). More specifically, the administrative leave constitutes disciplinary action because I was denied the ability to earn overtime. (See below under Age Discrimination the financial implications of Administrative Leave).

On June 8, 2023, the Falls Township Board of Supervisors emailed the Township Manager about my employment status and asked why I had not been returned to work, given that I had been cleared by the doctor who conducted an independent psychiatric evaluation on May 17, 2023. The email indicates that Fred Harran, the Sheriff of Bucks County, hired by the Township to conduct an independent investigation of me was completed.  The email indicates that Harran spoke to a few people, and they indicated my demeanor changed after a shooting I was involved in August of 2021. The Falls Township Board of Supervisors email makes no mention that the Board of Supervisors even considered disciplinary action for the allegations in Chief Whitney's December 5 and 6 memos. Rather the email is asking what the holdup is for returning me to work.

The Township Manager did not bring me back to work, despite being instructed to do so. I was only brought back to work after I filed a grievance on June 14, 2023, in which I asserted that my administrative leave constituted disciplinary action. It took the Township Manager seven days to notify me that I could return to work. I believe the Township manager delayed my return in retaliation for reporting discrimination.

### C.   Retaliation – Denied Promotion

On December 20, 2022, Sgt. Clark announces "Supervisor Promotional Process Announcement."  According to Article 33 of the Collective Bargaining Agreement (Ex. H), the promotional procedure consists of three elements: 1. Objective examination (written exam) worth 55% of your total score, 2. Performance Evaluation worth 10% of your total score, 3. Oral Examination worth 35% of your total score.

**Step 1 Written Exam**
On April 26, 2023, I took the written exam. Sgt. Clark administered the written exam. Sgt. Clark's proctoring of this exam was a violation of Article 33 Section 5 of the Collective Bargaining Agreement that states, "No one involved with the test or the administration of the test will be an employee or resident of Falls Township."  (Ex. H,  Article 33 of CBA).

On the day of the written exam, I selected a seat at the far end of the room with the most distance from Sgt. Clark. Throughout the testing period, he stood scowling and staring me down and pacing the room from directly behind me to in front of me. To say the least, Sgt. Clark was very intimidating and distracting. I also believe his actions were in retaliation for reporting his discriminatory conduct.

Despite Sgt. Clark's actions, I received the highest score of those eligible for promotion to Corporal (84.80%). The three above me were either Detectives or Corporals testing for Sergeant positions.

**Step 2 Performance Evaluation**
Historically candidates have always been evaluated by their immediate supervisor.  My immediate supervisor Sgt. A. Fanelli filled out my performance evaluation on April 19, 2023. He gave me a score of 90%. (Performance Evaluation dated 4/19/23, See Ex. I).

Exhibit 24                                      Elmore_000097

**Edward Elmore v. Falls Township Police Department**
**EEOC Complaint Cont.**

On **April 27, 2023**, Chief Whitney published a memo with each applicant's Performance Evaluation ratings. (See Ex. J). Even though my supervisor had given me 90% on April 19th, Chief Whitney's memo indicated my performance rating was 51%. The day after Chief Whitney published his memo, on April 28, 2023, Sgt. Clark filled out another Performance Evaluation for me and gave me 51% (Performance Evaluation **4/28/23** Ex. K) to support the score provided by Chief Whitney in the memo he published a day before. The Performance Evaluation completed by Sgt. Clark on April 28, 2023, was signed by Sgt. Clark and Chief Whitney. My direct supervisor, Sgt. A. Fanelli did not sign this evaluation. Subsequently, Sgt. A. Fanelli confided in me that he was not a party to changing the evaluation form, and he wanted me to know that he had given me a 90% on the evaluation he filled out.

Additionally, on the evaluation Sgt. Clark filled out he indicated the evaluation was based on the period from 1/1/23 to 4/10/23. However, I was out of work, on IOD (injured on duty) status, for that entire period of time. Sgt. Clark gave me a very specific negative rating on my evaluation, even though I did not work a single day during the time his evaluation was based on.

**Step Three Oral Interviews**
My oral interview was scheduled for June 5, 2023.  After the interview I discovered that one of the individuals conducting the oral interview was a co-worker of Chief Whitney's son. The collective bargaining agreement requires the testing process to be fair and objective and explicitly states that employees and residents are excluded from the interview process. (Ex. H, CBA Article 33 Section 5). I was denied this opportunity because the co-worker of Chief Whitney's son would almost certainly be aware of the administration's animosity towards me, and the score appears to reflect it.

On July 18, 2023, the final promotional list was posted. The final list ranked the applicants based on their total combined scores. From this list, 4 officers were promoted to Cpl. My score had been sufficiently diminished by the discrimination that my score fell below the cut-off point for promotion. Had my evaluation not been altered by Sgt. Clark and Chief Whitney, my score would have put me second in line with those who were promoted. Had I been provided a fair interview; I would have had the top score.

Based on the acts of retaliation, I was denied a promotion. On July 27, 2023, I was officially denied a promotion in retaliation for reporting discrimination in the department.

**Age Discrimination**

Chief Whitney has established an inner circle mostly of younger and newer officers. They consistently receive preference to attend schools and local training, and he overlooks and defends their wrongdoing while attacking and driving out senior officers at or near retirement age. Removing senior officers allows the Township to create a police force of younger officers.

Chief Whitney has and continues to engage in discriminatory and harassing conduct toward senior officers approaching the retirement age 50. The discrimination and harassment included but is not limited to:

- Removing senior officers from assignments and duties and then turning around and giving the assignments and duties to younger junior officers.
- Selecting junior officers for training and assignments over senior officers.
- Arbitrarily requiring older officers to take fitness for duty exams and obtain independent medical evaluations to remove older officers from the department.
- Making defamatory statements about senior officers.

Exhibit 24                    Elmore_000098

## Edward Elmore v. Falls Township Police Department
## EEOC Complaint Cont.

- Making unfounded claims of dishonesty or wrongdoing and then referring the officers to the Bucks County DA for investigations. All eventually being cleared.
- Making unfounded claims of criminal behavior and then making referrals to the DA and FBI. All eventually being cleared.
- The misuse of 'administrative leave' to separate and ostracize senior officers from their coworkers, strip them of contractual benefits without due process protections and reduce their ability to work and earn overtime at a critical point in their career that has a permanent and profound impact on lifelong retirement benefits.

**Recent examples of discrimination and harassment of older officers:**

The Township has repeatedly placed older officers, including myself, improperly on administrative leave. This strips the older officers of their contractual benefits to earn overtime at a critical point in their career and permanently diminishes the pension benefits they will receive for life.  Upon information and belief, the following officers, including myself have been subjected to improper administrative leave:

- **Ofc. Spiritosanto (age 59)**
- **Ofc. Detrick (age 53)**
- **Ofc. Jeff Rhodunda (age 49)**
- **Cpl. Langan(age 51)**
- **Ofc. Bruce Rhodunda(age 57)**
- **Cpl. Crosier (age 50)**

**My discrimination (age 46)**

In March of 2022, the chief falsely claimed I had left training early and had 'stolen time'. On the day in question, I met with Chief Whitney in his office at the end of the training day and then spent several hours meeting with Sgt. Clark in his office. Subsequently, I was cleared by an independent investigator, Fred Horan. (Ex. L, 4/7/23 email that contains a typo that the incident occurred on February 25, 2023, when it happened on February 25, 2022).

On April 23, 2022, the Chief referred me to the DA's office for criminal investigation. On August 17, 2022, the District Attorney informed Acting Chief Ward that Chief Whitney's allegations were unfounded. (Ex. M, DA letter dated August 17, 2022).

**Summary**

I believe I was subjected to retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended 1991, 42 U.S.C. § 2000e, *et seq*.; and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq.,* as amended, 1991. I was subjected to retaliation in the form of adverse employment action and harassment because I engaged in protected activity by reporting discrimination in the workplace.

I also believe I have been subjected and continue to be subjected to discrimination because of my age, 46, in violation of the ADEA (Age Discrimination in Employment Act of 1967). I have been and continue to be subjected to discrimination in the form of adverse employment action and harassment.

Exhibit 24                                              Elmore_000099



# Memorandum

**To:**   Falls Township Board of Supervisors

**From:** Tom Hearn and Melissa Atkins

**CC:**   Matthew Takita

**Date:** June 12, 2023

**Re:**   PO Elmore/

In our absence during tonight's Executive Session, due to prior commitments we wanted to provide the Board with further guidance and historical perspective concerning Elmore. Accordingly, we are providing the attached Executive Summary, which was previously distributed to the Board. It has been our position that the totality of Elmore's conduct, as reflected in the Executive Summary, was unbecoming of a Township police officer and therefore warranted termination of employment.

In addition, to the Executive Summary, we have attached the below documents for clarity and ease of reference regarding Elmore's ULP and PAFT's position on the promotional scoring. As it pertains to Elmore's ULP, PAFT is asserting that Elmore was placed on administrative leave in retaliation from participating in protected activity. As is demonstrated in the Township's answer and Executive Summary, Elmore was not retaliated for participating in protected union activity. Instead, he was placed on administrative leave pending the investigation into his misconduct. As further demonstrated in the Answer, Elmore was not prohibited from partaking in Union business, instead he was prohibited from contacting police personnel concerning Falls Township related business- not PAFT related business. In fact, Elmore served as a witness for PO Crozier's arbitration hearing, which was conducted at the Township. It is also worth noting that Elmore's plan and actions in trying to force the removal of Whitney and/or Ward would have supported an unfair labor practice charge being filed against PAFT as it was designed, in part, to prevent them from participating in ACT 111 negotiations. Lastly, as it relates to the promotional evaluation scoring, PAFT's position, is that the updated scores remain in place, as memorialized in PO Thomas' correspondence dated June 9th.

1. PO Elmore's Unfair Labor Charge and the Township's response thereto;
2. Chief Whitney's December 13, 2022, Memo to PO Elmore regarding Administrative Leave; and
3. Communication from PAFT President George Thomas dated June 9, 2023, regarding PAFT's position on the promotional evaluation scoring.

4873-9293-5273 v1

Exhibit 25

DEF_ESI_08673

TO:    Matthew Takita

RE:    Executive Summary: Disciplinary Recommendation for Edward Elmore

Chief Whitney has recommended that Police Officer Edward Elmore be dismissed from his employment with Falls Township. Chief Whitney provided the Board of Supervisors a cover letter, dated January 26, 2023, generally explaining the reasoning for his recommendation. Chief Whitney further provided a ten-page memorandum summarizing and explaining the evidence collected supporting his recommendation, along with copies of relevant documents, audio recordings, and video footage. Chief Whitney requested that the Board review these materials prior to deliberating his recommendation.

Per Township practice, the Board of Supervisors reviews disciplinary recommendations and makes a final determination as to the issuance of discipline. As you know, the Board may act on Chief Whitney's recommendation, amend Chief Whitney's recommendation, or deny Chief Whitney's recommendation and take no disciplinary action.

## I.    SUMMARY OF POLICE DEPARTMENT DISCIPLINARY PRACTICES

- The Police Department issues discipline pursuant to a table of discipline, which provides penalty ranges for specific violations of the disciplinary code.

- The Police Department uses the disciplinary code and table of discipline to ensure that departmental discipline is evenly and fairly applied to all members of the Department.

- The Police Department also uses the disciplinary code and table of discipline to put members on notice of the consequences of policy violations.

- Honesty and truthfulness are critically important characteristics for law enforcement officers. Dishonest or untruthful officers face not only discipline from the Police Department but potentially further consequences from the District Attorney's Office (DAO). Any officer found to be untruthful can expect to be reviewed by the DAO to assess their ability to testify in criminal trials. Instances of dishonesty must be provided by the DAO to criminal defendants, who can use those instances to attack the credibility of the officer in criminal proceedings. Further, dishonesty amongst law enforcement erodes public trust in the Police Department.

- Dishonesty during an internal investigation (and Loudermill hearings) creates two serious issues: (1) refusal to accept responsibility for one's actions; and (2) the dishonesty itself. It is nearly impossible to rehabilitate an officer who exhibits these behaviors.

## II.    EVIDENCE AGAINST OFFICER ELMORE

- Officer Elmore's misconduct falls into three categories: **(1) he stole time from the Township and the County; (2) he lied during an internal investigation into the time theft; and (3) he was insubordinate and engaged in conduct unbecoming an officer** when he attempted to avoid discipline by attacking the Police Department command staff.

1

4866-8138-8109 v1

Exhibit 25

DEF_ESI_08674

a. <u>Time Theft</u>

- On February 25, 2022, Officer Elmore attended a training session sponsored by the Bucks County District Attorney's Office (DAO).

- Officer Elmore needed to attend training for eight (8) hours in order to be excused from the remainder of his twelve-hour shift.

- Officer Elmore attended training for at most 3.5 hours on February 25.

- Officer Elmore then (1) excused himself from the remainder of his shift, and (2) submitted an overtime reimbursement request to the County for more hours than he had worked.

- These events came to the attention of the Police Department when the Bucks County District Attorney's Office inquired about the excessive overtime request.

b. <u>Internal Investigation</u>

- Elmore made material misrepresentations during a verbal internal interview with Lt. Ward.

- After the interview, Lt. Ward offered Officer Elmore an opportunity to accept responsibility for his misrepresentations in exchange for restitution and a short suspension. Officer Elmore never responded to Lt. Ward's offer.

- Officer Elmore later submitted a written statement in place of having a <u>Loudermill</u> hearing. The written statement contained additional misrepresentations.

c. <u>Conduct Unbecoming and Insubordination</u>

- In April 2022, Officer Elmore became aware that he faced potential discipline, possibly up to termination.

- Officer Elmore then orchestrated a Vote of No Confidence by PAFT members regarding Chief Whitney.

- The Township spent a significant amount of money investigating the allegations raised by PAFT and/or Officer Elmore. The investigation found no merit to any of PAFT's allegations.

- Additionally, the investigation raised concerns that Officer Elmore had perjured himself in an attempt to bolster these allegations by informing a Bucks County District Court judge that he wished to withdraw a traffic citation, one of only six he had issued, because it was issued pursuant to an illegal ticketing quota system. <u>See</u> Campbell Durant Report at p. 40, n. 14.

2

4866-8138-8109 v1

Exhibit 25

DEF_ESI_08675

- In November 2022, Officer Elmore attended a <u>Loudermill</u> hearing in the Township Building wearing a custom-printed t-shirt with a picture of Chief Whitney next to a picture of Derek Chauvin (convicted of murdering civilian George Floyd).

- In November 2022, Officer Elmore created a document falsely accusing Chief Whitney and Lt. Ward of racially motivated unconstitutional police activity. The document linked to a website containing the photo of Chief Whitney and a CCTV video of an altercation involving Lt. Ward. Lt. Ward had been cleared of any wrongdoing by the DAO, the former Chief of Police, and an independent investigator hired by the Township.

- Officer Elmore shared the document and linked material with members of the Falls Township Police Department and neighboring police departments.

- As the result of Officer Elmore's behavior in late-2022, multiple members of the Police Department have filed complaints of harassment with Human Resources.

### III.    POTENTIAL CONSEQUENCES

Prior to deliberations, I want to make you aware of some potential consequences of the Board's ultimate decision.

First, when deliberating what – if any – disciplinary action the Board will issue to Officer Elmore, please bear in mind that the Township is currently defending multiple civil lawsuits brought by current and former female employees alleging gender-based discrimination. Differential discipline, with certain officers being treated more favorably than others, has far-reaching ramifications. Not only does differential discipline bolster the multiple sex/gender discrimination lawsuits filed by former and current female officers, it is deleterious to departmental morale and engenders mistrust department by disregarding, without explanation, recommendations made by command staff of the Township among its own employees. **As the ultimate decision-maker for discipline issued to employees, members of the Board will be required to explain final disciplinary decisions that deviate from departmental recommendations in depositions and/or other court proceedings.**

3

4866-8138-8109 v1

Exhibit 25

DEF_ESI_08676

**Whitney, Nelson**

| | |
|---|---|
| From: | Unterburger, Daniel <daniel.unterburger@obermayer.com> |
| Sent: | Friday, November 4, 2022 10:29 AM |
| To: | Whitney, Nelson; Hearn, Thomas; Schnecker, Aimee |
| Cc: | Matthew Takita; Sherryann McGovern |
| Subject: | RE: Elmore |



**From:** Whitney, Nelson <n.whitney@fallstwppd.com>
**Sent:** Friday, November 4, 2022 8:45 AM
**To:** Hearn, Thomas <Thomas.Hearn@obermayer.com>; Schnecker, Aimee <aimee.schnecker@obermayer.com>; Unterburger, Daniel <daniel.unterburger@obermayer.com>
**Cc:** Matthew Takita <m.takita@fallstwp.com>; Sherryann McGovern <s.mcgovern@fallstwp.com>
**Subject:** Elmore



Nelson

Nelson E. Whitney, II
Chief of Police
Falls Township Police Department
188 Lincoln Highway
Fairless Hills, PA 19030
EMAIL: n.whitney@fallstwppd.com

1

Defense 0714

Exhibit 26

*- This was before the 11.21.22 LouderMill hearings*
*that Ed attended.*
*- why comm w/ CHHS about Ed*

**Whitney, Nelson**

| | |
|---|---|
| **From:** | Unterburger, Daniel <daniel.unterburger@obermayer.com> |
| **Sent:** | Friday, November 4, 2022 11:42 AM |
| **To:** | Whitney, Nelson; Schnecker, Aimee; Hearn, Thomas |
| **Cc:** | Sherryann McGovern |
| **Subject:** | RE: E. Elmore |



**From:** Whitney, Nelson <n.whitney@fallstwppd.com>
**Sent:** Friday, November 4, 2022 11:38 AM
**To:** Unterburger, Daniel <daniel.unterburger@obermayer.com>; Schnecker, Aimee <aimee.schnecker@obermayer.com>; Hearn, Thomas <Thomas.Hearn@obermayer.com>
**Cc:** Sherryann McGovern <s.mcgovern@fallstwp.com>
**Subject:** FW: E. Elmore

**From:** Sherry McGovern <s.mcgovern@fallstwp.com>
**Sent:** Friday, November 4, 2022 10:59 AM
**To:** Whitney, Nelson <n.whitney@fallstwppd.com>; Ward, Henry <h.ward@fallstwppd.com>
**Subject:** FW: E. Elmore

See below.

Sherry McGovern, HR Coordinator
Falls Township
188 Lincoln Highway, Suite 100
Fairless Hills, PA 19030
Phone: (215) 949-9000 ext. 232
Fax: (215) 949- 2120

**From:** Marie Wallace <mwallace@dvtrusts.com>
**Sent:** Friday, November 4, 2022 10:56 AM
**To:** Sherry McGovern <s.mcgovern@fallstwp.com>; Mary Hicks <mhicks@dvtrusts.com>; Jean Trzcinski <jtrzcinski@dvtrusts.com>
**Subject:** FW: E. Elmore

Good morning Sherry,

1

Defense 0713

Exhibit 26

You can advise Officer Elmore that light duty is not available at this time. He is scheduled for a surgery this month, he will be out of work in another week or so. After the surgery, if the issue of light duty comes up again, we can address at that time.

Thank you and be safe,
Marie

**From:** Sherry McGovern <s.mcgovern@fallstwp.com>
**Sent:** Friday, November 4, 2022 10:46 AM
**To:** Mary Hicks <mhicks@dvtrusts.com>
**Cc:** Marie Wallace <mwallace@dvtrusts.com>; Jean Trzcinski <jtrzcinski@dvtrusts.com>
**Subject:** FW: E. Elmore

Also, is there any chance to revoke the recommendation of light duty? As I stated in the email below the Chief is extremely concerned with allowing a police officer to work light duty without the use of his dominant right arm.

Sherry McGovern, HR Coordinator
Falls Township
188 Lincoln Highway, Suite 100
Fairless Hills, PA 19030
Phone: (215) 949-9000 ext. 232
Fax: (215) 949- 2120

**From:** Sherry McGovern
**Sent:** Friday, November 4, 2022 10:14 AM
**To:** Mary Hicks <mhicks@dvtrusts.com>
**Cc:** Jean Trzcinski <jtrzcinski@dvtrusts.com>; Marie Wallace <mwallace@dvtrusts.com>
**Subject:** RE: E. Elmore

Good morning,

There are many concerns with this claim coming from the Chief and Lieutenant. They feel he should not be on light duty because of the many restrictions he has with his right arm and having no contact with the public. Officer Elmore is a K-9 officer that drives a marked car to and from work. Last night while driving into work he claimed he banged his already injured arm on the arm rest in his vehicle which resulted in him calling out and not showing up for last night's shift. This is also a concern because of the personnel issues the command staff has been having with him.

Please let me know your thoughts and what we should do to prevent future injuries.

Thank you,
Sherry McGovern, HR Coordinator
Falls Township
188 Lincoln Highway, Suite 100
Fairless Hills, PA 19030
Phone: (215) 949-9000 ext. 232
Fax: (215) 949- 2120

**From:** Mary Hicks <mhicks@dvtrusts.com>
**Sent:** Tuesday, November 1, 2022 2:21 PM
**To:** Sherry McGovern <s.mcgovern@fallstwp.com>
**Subject:** RE: E. Elmore

2

Defense 0710

Exhibit 26

No problem Sherry.

**Mary Hicks, RN, MSN, MBA**
**Nurse Case Manager**



DELAWARE
VALLEY
TRUSTS
Managed Risk Collective Rewards.

719 Dresher Road | Horsham, PA | 19044-2205
Phone: (267)-803--5729| Fax: (267)-803-5779
www.dvtrusts.com | Mhicks@dvtrusts.com

**From:** Sherry McGovern <s.mcgovern@fallstwp.com>
**Sent:** Tuesday, November 1, 2022 2:08 PM
**To:** Mary Hicks <mhicks@dvtrusts.com>
**Subject:** RE: E. Elmore

Hi Mary,

Thank you for the clarification.  I was just a little concerned when you stated that he was to have no contact with the public.

Sherry McGovern, HR Coordinator
Falls Township
188 Lincoln Highway, Suite 100
Fairless Hills, PA 19030
Phone: (215) 949-9000 ext. 232
Fax: (215) 949- 2120

**From:** Mary Hicks <mhicks@dvtrusts.com>
**Sent:** Tuesday, November 1, 2022 1:58 PM
**To:** Sherry McGovern <s.mcgovern@fallstwp.com>
**Subject:** RE: E. Elmore

Hi Sherry,
He is unable to defend himself with the brace on his right elbow.
Mary

**Mary Hicks, RN, MSN, MBA**
**Nurse Case Manager**



DELAWARE
VALLEY
TRUSTS
Managed Risk Collective Rewards.

719 Dresher Road | Horsham, PA | 19044-2205
Phone: (267)-803--5729| Fax: (267)-803-5779
www.dvtrusts.com | Mhicks@dvtrusts.com

3

Defense 0711

Exhibit 26

**From:** Sherry McGovern <s.mcgovern@fallstwp.com>
**Sent:** Tuesday, November 1, 2022 11:37 AM
**To:** Mary Hicks <mhicks@dvtrusts.com>
**Cc:** Jean Trzcinski <jtrzcinski@dvtrusts.com>; Origami (live-inbox-PC@origamirisk.com) <live-inbox-PC@origamirisk.com>
**Subject:** RE: E. Elmore

Hi Mary,

I hope you are well!
Can you tell me why he is to have no public contact?

Sherry McGovern, HR Coordinator
Falls Township
188 Lincoln Highway, Suite 100
Fairless Hills, PA 19030
Phone: (215) 949-9000 ext. 232
Fax: (215) 949- 2120

**From:** Mary Hicks <mhicks@dvtrusts.com>
**Sent:** Thursday, October 27, 2022 9:44 AM
**To:** Sherry McGovern <s.mcgovern@fallstwp.com>
**Cc:** Jean Trzcinski <jtrzcinski@dvtrusts.com>; Origami (live-inbox-PC@origamirisk.com) <live-inbox-PC@origamirisk.com>
**Subject:** E. Elmore

Good morning Sherry,
Mr. Elmore's work restrictions are enclosed. He is tentatively scheduled for surgery 11/11/2022. If he responds to physical therapy, surgery will be cancelled at his f/u appt. on 11/10/2022. He is not to have any contact with the public ad no use of the right upper extremity.
Thank you,
Mary

**Mary Hicks, RN, MSN, MBA**
**Nurse Case Manager**



DELAWARE
VALLEY
TRUSTS
Managed Risk Collective Rewards.

719 Dresher Road | Horsham, PA | 19044-2205
Phone: (267)-803--5729| Fax: (267)-803-5779
www.dvtrusts.com | Mhicks@dvtrusts.com

4

Defense 0712

Exhibit 26

## Sherry McGovern

| | |
|---|---|
| **From:** | Matthew Takita |
| **Sent:** | Monday, December 12, 2022 4:53 PM |
| **To:** | Nelson Whitney; Sherry McGovern |
| **Cc:** | Hearn, Thomas; Atkins, Melissa; Schnecker, Aimee; Lauren Gallagher; 'Michael Clarke' |
| **Subject:** | Officer Elmore |

Nelson
Please place Officer Elmore on paid administrative leave effective immediately.

Tom and team
Please prepare the notice for the Chief.

Matthew K. Takita, AIA, MCP
Township Manager
Zoning Administrator
Director of Code Enforcement

1

Exhibit 27

Defense 0014

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD ELMORE** | : | |
| PLAINTIFF, | : | **CIVIL ACTION NO. 2:25-cv-02076** |
| | : | |
| v. | : | |
| | : | |
| **FALLS TOWNSHIP** | : | |
| DEFENDANT. | : | |
| | : | |

**PLAINTIFF'S REQUEST FOR ADMISSIONS
ADDRESSED TO DEFENDANT, FALLS TOWNSHIP**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff, Edward Elmore ("Mr. Elmore" and/or "Plaintiff"), requests that within 30 days from the receipt of this request, Defendant, Falls Township. ("Township" and/or "Defendant") admit the truth of each of the following Requests for purposes of this action only and subject to all pertinent objections as to the admissibility thereof that may otherwise be imposed at trial.

**Request for Admissions**

1.  Admit that the Plaintiff was cleared by a psychologist to return to work after the shooting incident on August 29, 2021.

2.  Admit that on February 25, 2022, the Plaintiff met with Police Chief Nelson Whitney.

3.  Admit that when the Plaintiff met with Chief Whitney on February 25, 2022, Plaintiff informed Chief Whitney that he was violating the civil rights of officers Bruce Rhondunda, Steve Langan, and Victoria Crosier.

4.  Admit that on February 25, 2022, Chief Whitney instructed Plaintiff to bring him some "case law" that indicates that he was treating officers Bruce Rhodunda, Steve Langan, and Victoria Crosier.

Exhibit 28

5.     Admit on February 28, 2022, Officer Victoria Crosier filed a discrimination complaint with the Pennsylvania Human Relations Commission against Falls Township.

6.     Admit that on March 9, 2022, the Plaintiff met again with Chief Whitney and presented him with a copy of the 14th Amendmentto the U.S. Constitution.

7.     Admit during the March 9, 2022, meeting with Chief Whitney, Plaintiff told Chief Whitney that he was treating female Officer Victoria Crosier differently than her fellow male officers.

8.     Admit during the March 9, 2022, meeting with Chief Whitney, Plaintiff told Chief Whitney that he was subjecting female Officer Victoria Crosier to a "witch hunt."

9.     Admit during the March 9, 2022, meeting with the Plaintiff, Chief Whitney said he was attempting to discipline or cause to leave the officers who made EEOC complaints against him and/or the police department.

10.    Admit on March 13, 2022, Officer Victoria Crosier filed a grievance with the Falls Township Police Department.

11.    Admit that on March 16, 2022, Chief Whitney instructed Lt. H. Ward to investigate the Plaintiff and his fellow officers in the K-9 unit for alleged time theft on February 25, 2022.

12.    Admit that on March 29, 2022, Lt. H. Ward issued a written report of his investigation of Plaintiff and his fellow officers in the K-9 unit for alleged time theft on February 25, 2022.

13.    Admit that Mr. Elmore was not given a copy of this Lt. H Ward's March 29, 2022 report until December 2, 2022.

14.    Admit that on April 26, 2022, Chief Nelson Whitney was placed on administrative leave.

15.    Admit that on April 26, 2022, Chief Whitney emailed the District Attorney's office, accusing the Plaintiff of theft of time on February 25, 2022.

16.    Admit that while Chief Whitney was out on administrative leave from April 26, 2022, until he returned on September 12, 2022, Lt. H. Ward served as the interim chief of police for Falls Township, PA.

17.    Admit that on September 22, 2022, the Township placed Mr. Elmore on Injured on Duty (IOD) status.

Exhibit 28

18.  Admit that on September 22, 2022, the Township assigned the Plaintiff to work light duty.

19.  Admit that on October 6, 2022, the Plaintiff met with Matthew Takita, the Township Manager, and Rich Dippolito, the Assistant Township Manager.

20.  Admit during the meeting on October 6, 2022, Plaintiff reported to Mr. Takita and Mr. Dipolito discrimination in the Department's hiring process concerning female and minority officers.

21.  Admit that on October 11, 2022, the Plaintiff spoke with Mr. Dippolito about discrimination in the Department's hiring process concerning female and minority officers.

22.  Admit that on October 11, 2022, the Plaintiff spoke with Mr. Dippolito and advised him that the police department was discriminating against female and minority officers.

23.  Admit that on November 7, 2022, Lt. Hank Ward informed the Plaintiff that the Township's Worker's Compensation Carrier notified the Township that a light-duty assignment was unavailable to Mr. Elmore at that time.

24.  Admit that the Township's Worker's Compensation Carrier, Delaware Valley Health Trust, did not inform the Township that the Plaintiff could no longer perform light duty in November 2022.

25.  Admit that the Falls Township Police Department Command decided that the Plaintiff could no longer work light duty in November 2022.

26.  Admit that the Loudermill hearing notice that the Plaintiff received on December 2, 2022, from Chief Whitney was for the alleged theft of time that was alleged to have occurred on February 25, 2022.

27.  Admit that on December 2, 2022, Mr. Elmore, for the first time, received a copy of Lt. H. Ward's March 29, 2022, memo, Subject: K-9 Unit Administration Investigation 22008-062-1-01.

28.  Admit Chief Whitney placed Mr. Elmore on Administrative leave on December 13, 2025.

29.  Admit that the Township Board of Supervisors did not place Mr. Elmore on Administrative leave in 2025.

30.  Admit that the Township hired Frederick A. Harran and Solutions 180 LLC to investigate the Plaintiff.

Exhibit 28

31.    Admit Mr. Harran conducted an investigation and found Mr. Elmore did not steal time on February 25, 2022.

32.    Admit that Mr. Harran recommended that no discipline be imposed on Mr. Elmore for the alleged theft of time on February 25, 2022.

33.    Admit that the Township's Board of Supervisors concluded that no disciplinary action would be imposed on Mr. Elmore for the alleged theft of time on February 25, 2022.

34.    Admit that Mr. Elmore was not terminated on February 28, 2024, for the alleged theft of time on February 25, 2022.

35.    Admit that in or about November and/or December 2022, Chief Whitney and the Townships' outside labor counsel recommended to the Township Board of Supervisors that the Plaintiff should be terminated.

36.    Admit that the Township Board of Supervisors rejected Chief Whitney and Labor Counsel's recommendation to terminate Mr. Elmore for engaging in conduct unbecoming of a police officer, insubordination, and disobedience in November 2022 and December 2022.

37.    Admit the Township Board of Supervisors did not impose any discipline on Mr. Elmore for engaging in conduct unbecoming of a police officer, insubordination, and disobedience in November 2022 and December 2022.

38.    Admit that, in accordance with the outcome of Mr. Elmore's Step II Grievance hearing held on Monday, July 31, 2023, the Township was required to remove from the Plaintiff's personnel file any documentation that Plaintiff was disciplined for engaging in conduct unbecoming of a police officer, insubordination, and disobedience in November 2022 and December 2022.

39.    Admit that the Township did not remove from the Plaintiff's personnel file any documentation that Plaintiff was disciplined for engaging in conduct unbecoming of a police officer, insubordination, and disobedience in November 2022 and December 2022.

**2023 Promotional Process**

40.    Admit that Mr. Elmore achieved the highest score of 84.80% on the written exam administered on April 26, 2023, among the Township's officers seeking promotion to the rank of Corporal.

41.    Admit that on April 19, 2023, Sargent Anthony Fanelli completed a performance evaluation for the Plaintiff and gave him an overall score of 90%.

Exhibit 28

42.  Admit that the evaluation Sargent Anthony Fanelli completed for Plaintiff was purported to be based on Mr. Elmore's performance during the period from September 1, 2022, to January 1, 2023.

43.  Admit that on April 27, 2023, Chief Whitney issued a memo with performance evaluation ratings for each of the applicants who participated in the Supervisory Promotional Process in spring 2023.

44.  Admit that on April 28, 2023, Chief Whitney and Lt. Christopher Clark provided a new written performance evaluation for the Plaintiff, assigning him an overall score of 51%.

45.  Admit that Chief Whitney and Lt. Clark's evaluation of the Plaintiff, completed on April 28, 2023, was based on the period from January 1, 2023, to April 10, 2023, during which the Plaintiff was on Administrative Leave.

46.  Admit that the Performance Evaluation completed by Sargent Anthony Fanelli was not used in the calculation of the Plaintiff's final score for the Supervisory Promotional Process in July 2023.

47.  Admit that the Performance Evaluation score of 51% issued by Chief Whitney and Lt. Clark was substituted for Sargent Fanelli's score of 90% to determine Plaintiff's final overall score for the Supervisory Promotional Process in July 2023.

48.  Admit that, due to the lower score on Plaintiff's performance evaluation filled out by Chief Whitney and Lt. Clark, the Plaintiff did not qualify for a promotion to Corporal.

49.  Admit that in July 2023, the Plaintiff would have been promoted to Corporal if Sergeant Fanelli's Performance Evaluation score of 90% had been used to calculate the Plaintiff's final score.

50.  Admit that the four officers promoted to Corporal in summer 2023 were James Szamboti, Ryan Murphy, Nicholas Phillipe, and Alexander Sansone.

51.  Admit that the four officers, James Szamboti, Ryan Murphy, Nicholas Phillipe, and Alexander Sansone, were all under the age of 35 when they were promoted in the summer of 2023.

**Plaintiff's Return to Work 2023**

52.  Admit that on May 15, 2023, Mr. Takita, the Township Manager, told the Plaintiff he could not return to work until he completed a mental health evaluation called a "Fitness for Duty Exam."

53.  Admit that before the Plaintiff met with Dr. Gladys Fenichel on May 17, 2023, the Township's Labor Counsel, Melissa Atkins, Esq., contacted Dr. Fenichel by phone.

Exhibit 28

54.    Admit that Township's Labor Counsel, Melissa Atkins, informed Dr. Gladys Fenichel that the Plaintiff was a candidate for workplace violence and was "at risk of shooting the place up."

55.    Admit on June 8, 2023, Mr. Takita informed Jeffry E. Dence, the Chair of the Falls Township Board of Supervisors, that he would instruct Chief Whitney to tell Officer Elmore to return on June 9, 2023.

56.    Admit that Mr. Elmore was not informed that he could return to work on June 9, 2023.

57.    Admit Plaintiff was not permitted to return to work until June 19, 2023.

**Robert Kent Incident and Dogs**

58.    Admit that Robert Kent was not a vendor of Falls Township in 2022, 2023, or 2024.

59.    Admit that Lawrence Bell was charged with defiant trespass, simple assault, and terroristic threats for his actions on July 26, 2022, at Robert Kent's private residence.

60.    Admit there is a video from July 26, 2022, showing Lawrence Bell striking Robert Kent.

61.    Admit that in February 2023, Lawrence Bell pled guilty to harassment – subjecting others to physical contact and disorderly conduct – engaged in fighting.

62.    Admit that Lieutenant Christopher Clark represented the Falls Township Police Department at Lawrence Bell's preliminary hearing on February 28, 2023.

63.    Admit that between February 28, 2023, and December 2023, Lieutenant Clark did not raise any issues with Plaintiff's arrest report of Lawrence Bell on July 26, 2022.

64.    Admit that between February 28, 2023, and November 2023, there was no investigation as to whether or why statements made by Lawrence Bell were excluded from the arrest report made by Plaintiff of the incident on July 26, 2022.

65.    Admit that the Plaintiff did not testify at any criminal proceeding regarding Lawrence Bell's conduct on July 26, 2022.

66.    Admit that in 2022 and 2023, the Township took no disciplinary action against Plaintiff regarding his handling of the incident on July 26, 2022, involving Mr. Lawrence and Mr. Kent.

67.    Admit that the Plaintiff received a dog named Oakley from Robert Kent in the summer of 2023.

Exhibit 28

68. Admit that Chief Whitney heard in the summer of 2023 that Plaintiff had acquired a new dog.

69. On November 30, 2023, Officer Steve Langan sent an email to all police officers at Falls Township with a memo about the "K9 Unit Selection Process."

70. On December 1, 2023, Plaintiff submitted a written request to be considered for the K9 position identified in Mr. Langan's "K9 Unit Selection Process" memo.

71. Admit that on December 1, 2023, Lt. Clark and Sgt. Reeves visited Robert Kent at his personal property in Falls Township, Pennsylvania.

72. Admit that when visiting Mr. Kent at his personal property on December 1, 2023, Lt. Clark accused Mr. Kent of bribery.

73. Admit that while visiting Mr. Kent at his personal property on December 1, 2023, Sgt. Reeves accused Mr. Kent of bribery.

74. Admit that there is a police dashboard camera ("dashcam") recording of Lt. Clark and Sgt. Reeves' conversation with Mr. Kent on December 1, 2023.

75. Admit that Mr. Kent sent a letter to the Township dated December 8, 2023.

76. Admit that Mr. Kent's December 8, 2023, letter does not state that he donated or gifted the dog named Oakley to anyone.

77. Admit that Mr. Kent's December 8, 2023, letter does not include a statement that he had saved the Township $10,000 by the donation of a dog.

78. Admit that Chief Whitney never saw or inspected the dog named Oakley, who was in Mr. Elmore's possession.

79. Admit that the Township took no steps to assess the physical condition of the dog known as Oakley, who was in Mr. Elmore's possession.

80. Admit that the Township took no steps to determine the economic value of the dog known as Oakley, who was in Mr. Elmore's possession.

81. Admit that Melissa K. Atkins, Esq., did not take any steps to assess the physical condition of the dog called Oakley in Mr. Elmore's possession.

82. Admit that Thomas T. Hearn, Esq., took no steps to assess the physical condition of the dog called Oakley, which is in Mr. Elmore's possession.

Exhibit 28

83. Admit that Brian M. Rhodes, Esq., took no steps to determine the physical condition of the dog known as Oakley that was in Mr. Elmore's possession.

84. Admit that Melissa K. Atkins, Esq., Thomas T. Hearn, Esq., and Thomas T. Hearn, Esq., did not take any steps to determine the economic value of the dog known as Oakley, who was in Mr. Elmore's possession.

85. Admit that Chief Whitney never personally spoke to the Plaintiff about the dog named Oakley.

86. Admit that the dog named Oakley was never registered to attend training with the Philadelphia Police Academy.

87. Admit that the dog named Oakley never became a K-9 police dog.

88. Acknowledge that the investigation conducted by Melissa Atkins, Esq., and her colleagues at Obermayer Rebmann Maxwell & Hippel LLP concluded that Mr. Elmore did not accept a bribe from Robert Kent.

89. Admit that Mr. Elmore never stated to Chief Nelson Whitney or Lt. Christopher Clark that Robert Kent had donated the dog named Oakley to him.

90. Admit that Mr. Elmore never told the attorneys from Obermayer Rebmann Maxwell & Hippel LLP that Robert Kent had donated the dog named Oakley to him.

91. Admit that Mr. Elmore never told Chief Nelson Whitney or Lt. Christopher Clark that the dog named Oakley was a gift to him from Robert Kent.

92. Admit that Mr. Elmore never told the attorneys from Obermayer Rebmann Maxwell & Hippel LLP that the dog named Oakley was a gift to him from Robert Kent.

93. Admit that the lawyers from Obermayer Rebmann Maxwell & Hippel LLP never spoke with Robert Kent during their investigation of the Falls Township Police Department K-9 Unit in 2024.

94. Admit that any statements attributed to Robert Kent in the Obermayer Rebmann Maxwell & Hippel LLP Final Investigative report dated February 14, 2024, were not made by Mr. Kent to the attorneys at Obermayer Rebmann Maxwell & Hippel LLP.

95. Admit that the Plaintiff's February 23, 2024, Formal Response to the Loudermill Notice (Dated February 20, 2024) was not presented to the Falls Township Board of Supervisors during the executive session held on February 26, 2024.

96. Admit that the Plaintiff did not accept a bribe from Robert Kent.

Exhibit 28

97.    Admit that the Plaintiff was not terminated on February 28, 2024, for accepting a bribe.

98.    Admit that the Plaintiff did not accept a gratuity from Robert Kent.

99.    Admit that the Plaintiff did not violate Falls Township Police Department Policy #2.4.18.

100.    Admit that Falls Township Police Department Policy #3.6.1 sets forth how the Township shall obtain canines for the Falls Township Police Department's K9 team.

101.    Admit the Plaintiff did not violate Falls Township Police Department Policy #3.6.1.

102.    Admit the Plaintiff received no disciplinary action in 2022 or 2023 for advising a magistrate judge in 2022 to dismiss a ticket because it was issued under an illegal ticket quota imposed by Chief Whitney.

103.    Admit that on January 5, 2024, at the Township's request, Mr. Elmore spoke with Teresa Katalis, a representative of a public relations firm hired by the Township.

104.    Admit that Teresa Katalis issued a press release based on her conversation with the Plaintiff.

105.    Admit that Teresa Katalis's press release does not mention the Plaintiff's "inclusion in the last round of promotional exams on or about June 2023."

106.    Admit that Teresa Katalis's press release does not include statements by Plaintiff that contradict the facts set forth in any Incident report written by the Plaintiff.

**HARDWICK BENFER, LLC**

Tiffanie C. Benfer, Esq. (PA #202096)
2003 S. Easton Road
Suite 308
Doylestown, PA 18901
Telephone: (215) 230-1912
Email: tbenfer@hardwickbenfer.com

Mark Risk, Esq. (MDR-523)
Mark Risk, P.C.
60 East 42nd Street

Exhibit 28

Suite 4700
New York, NY 10165
Telephone: (212) 682-4100
mdr@mrisklaw.com
*Attorneys for Plaintiff*

Dated: January 27, 2026

Exhibit 28

## CERTIFICATE OF SERVICE

I, TIFFANIE C. BENFER, ESQ., attorney for Edward Elmore, hereby certify that a true and correct copy of Plaintiff's First Request for Admissions was served on January 27, 2026, via email to Defendant's Counsel:

Jahlee J. Hatchett Esq.
jjhatchett@mdwcg.com
Marshall Dennehey, P.C.
2000 Market Street, Suite 2300
Philadelphia, PA 19103

**HARDWICK BENFER, LLC**

_J C Benfer_
_____
Tiffanie C. Benfer, Esq. (PA #202096)
2003 S. Easton Road
Suite 308
Doylestown, PA 18901
Telephone: (215) 230-1912
Email: tbenfer@hardwickbenfer.com

_Attorney for Plaintiff_

Exhibit 28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ELMORE
                        Plaintiff,         :    CIVIL ACTON
            vs.                            :
                                           :    No. 2:25-cv-02076
FALLS TOWNSHIP,                            :
                        Defendant.         :
                                           :    JURY TRIAL DEMANDED
                                           :

---

### DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS

1. Admitted.

2. Denied.

3. Denied.

4. Denied.

5. Denied. As of this response, we are unaware when Crosier filed complaint of discrimination, by way of further response, defendant does not deny that Crosier did file a Complaint of Discrimination against Falls Township.

6. Denied. By way of further response, Defendant admits that Plaintiff did meet with Chief Witney on March 9, 2022.

7. Denied.

8. Denied.

9. Denied.

10. Objection. Defendant objects to this response on the basis that it is not relevant to the instant litigation. Subject to and without waiving said objection, Defendant admits that Crosier filed a grievance on March 13, 2022.

11. Denied as stated. It is admitted that Chief Whitney instructed Lt. Ward to investigate the plaintiff and other K9 officers for time theft.

Exhibit 29

February 25, 2026
Defendant, Falls Township's Responses to Plaintiff's RFA

12. It is admitted that Lt. Ward issued a written report of his investigation, said report is in writing and speaks for itself.

13. Denied. As of this response, Defendant representative(s) do/does not recall when Plaintiff received a copy of Lt. Ward's report.

14. Admitted.

15. Admitted.

16. Denied as stated. It is admitted that While Chief Whitney was out on leave, Lt. Ward was in charge of the Falls Township Police Department.

17. Denied as stated. It is admitted that around or about September 2022, Plaintiff was on injured on duty status.

18. Denied as stated. It is admitted that around or about September 2022, Plaintiff's physician would have made a determination regarding his light duty status.

19. Denied. As of this response, Defendant Representative(s) do/does not have an independent recollection of a meeting and/or conversation that took place on October 6, 2022, or the contents of the meeting.

20. Denied. As of this response, Defendant Representative(s) do/does not have an independent recollection of a meeting and/or conversation that took place on October 6, 2022, or the contents of the meeting.

21. Denied. As of this response, Defendant Representative(s) do/does not have an independent recollection of a meeting and/or conversation that took place on October 6, 2022, or the contents of the meeting.

22. Denied. As of this response, Defendant Representative(s) do/does not have an independent recollection of a meeting and/or conversation that took place on October 6, 2022, or the contents of the meeting.

23. Denied. As of this response, Defendant Representative(s) do/does not have an independent recollection of a meeting and/or conversation that took place on November 7, 2022, or the contents of the meeting.

24. Denied.

25. Denied.

26. Denied as stated. It is admitted that Chief Whitney provided plaintiff with a Loudermill hearing notice in connection with the K9 unit theft of time investigation, any Loudermill notice is in writing and speaks for itself.

2

Exhibit 29

February 25, 2026
Defendant, Falls Township's Responses to Plaintiff's RFA

27. Denied. Defendant is not aware of when Plaintiff received any documentation for the first time.

28. Denied.

29. Admitted.

30. Denied as stated. It is admitted that Frederick A. Harran was hired to review the investigation into the allegations of the K9 Unit's theft of time.

31. Denied. As of this response, defendant is not aware of the results of any investigation by Harran. By way of further response, any report is in writing and speaks for itself.

32. Denied. As of this response, defendant is not aware of the results of any investigation by Harran. By way of further response, any report is in writing and speaks for itself.

33. Denied.

34. Denied as stated. It is admitted that Plaintiff was terminated in connection with his acquisition of a K9 partner.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted in part, denied in part. It is admitted that in accordance with the outcome of Plaintiff's grievance hearing, Falls Township was required to purge specific information related to the aforementioned grievance. The remaining averments in this request are denied.

39. Denied.

40. Denied as stated. It is admitted that Plaintiff received an 84.80% on the written exam administered on April 26, 2023.

41. Denied as stated. It is admitted hat Sergeant Anthoney Fanelli completed a performance report for Plaintiff on or about April 19, 2023, any performance evaluation is in writing and speaks for itself.

42. Denied as stated. It is admitted that the evaluation completed by Sgt. Fanelli was for the time period from September 1, 2022, to January 1, 2023.

43. Admitted.

3

Exhibit 29

February 25, 2026
Defendant, Falls Township's Responses to Plaintiff's RFA

44. Admitted.

45. Denied as stated. It is admitted that any performance evaluation for Plaintiff completed on or about April 28, 2023, was based on the period from January 1, 2023 to April 10, 2023. Any evaluation is in writing and speaks for itself.

46. Admitted.

47. Denied as stated. It is admitted that evaluation score of 51% was used to determine Plaintiff's final overall score for the promotional process.

48. Denied as stated. It is admitted that Plaintiff did not qualify for a promotion to Corporal.

49. Denied.

50. Admitted.

51. Denied. Defendant is without sufficient information to respond to this request. By way of further response, age was not considered when deciding who to promote.

52. Admitted.

53. Denied. This request seeks an admission and/or denial in connection with third party individuals. By way of further response, this request seeks the admission and/or denial regarding privileged attorney client communications

54. Denied. This request seeks an admission and/or denial in connection with third party individuals. By way of further response, this request seeks the admission and/or denial regarding privileged attorney client communications.

55. Admitted in part, denied in part. It is admitted that in Mr. Takita's then-capacity as acting Township Manager, he would routinely update Mr. Dence on issues of this nature. However, as of this response, Mr. Takita does not have an independent recollection of providing Mr. Dence with any information as alleged in this request. As such, any remaining portions of this requests are denied.

56. Denied.

57. Denied. As of this response, Defendant Representative(s) does/do not have an independent recollection as to when Plaintiff was permitted to return to work, relative to June 19, 2023.

58. Denied. At this time, after sufficient investigation and discovery, Defendant is not able to confirm or deny the averment as to whether Robert Kent was a vendor for Falls Township in 2022, 2023 or 2024.

4

Exhibit 29

February 25, 2026
Defendant, Falls Township's Responses to Plaintiff's RFA

59. Admitted.

60. Denied. As of this response, Defendant representative(s) do/does not have an independent recollection of whether video exists depicting any interaction between Lawrence Bell and Robert Kent.

61. Denied. Defendant representative(s) does not possess information concerning the disposition of these charges.

62. Denied as stated. It is admitted that Lt. Clark represented Falls Township Police Department at the preliminary hearing that took place on or about February 28, 2023.

63. Denied. At of this response, Defendant Representative(s) do/does not have an independent recollection of whether Lieutenant Clark raised any issues with Plaintiff's arrest report of Lawrence Bell on July 26, 2022.

64. Admitted. By way of further response, Defendant was not aware of the issues at that time.

65. Admitted.

66. Admitted. By way of further response, Defendant was not aware of the issues at that time.

67. Denied as stated. It is admitted that Plaintiff did receive a dog named Oakley from Robert Kent.

68. Denied as stated. Chief Whitney was advised on November 29, 2023 by Lt. Langan that Plaintiff acquired a new K9 partner.

69. Denied as stated. It is admitted that on or about November 30, 2023, Officer Steve Langan sent an email with a memo about the K9 Unit Selection Process. Any memo is in writing and speaks for itself.

70. Denied as stated. It is admitted that on or about December 1, 2023, Plaintiff submitted a request to be considered for a K9 position. Said request is in writing and speaks for itself.

71. Denied as stated. It is admitted that on or about December 1, 2023, Lt. Clark and Sgt. Reeves visited Robert Kent.

72. Denied. At this time, Defendant representative(s) do/does not have an independent recollection of any meeting with Mr. Kent that occurred on or about December 1, 2023.

73. Denied. At this time, Defendant representative(s) do/does not have an independent recollection of any meeting with Mr. Kent that occurred on or about December 1, 2023.

5

Exhibit 29

February 25, 2026
Defendant, Falls Township's Responses to Plaintiff's RFA

74. Denied as stated. It is admitted that a "dashcam" video recording occurred contemporaneously with any interaction between Lt. Clark and Mr. Kent that occurred on or about December 1, 2023.

75. Denied as stated. It is admitted that Mr. Kent sent a letter to the Township.

76. Denied. Any letter is in writing and speaks for itself.

77. Denied. The letter is in writing and speaks for itself.

78. Admitted.

79. Denied as stated. It is admitted that the dog named Oakley's physical condition was not assessed as it was not an approved K9 partner.

80. Denied as stated. It is admitted that it is not the Falls Township policy to valuate K9 partners.

81. Denied as stated. Defendant is not aware of any actions Melissa K. Atkins would have taken in connection with Oakley.

82. Denied as stated. Defendant is not aware of any actions Thomas Hears would have taken.

83. Denied. Defendant is not aware of any actions…

84. Denied. Defendant is not aware…

85. Admitted.

86. Denied as stated.

87. Admitted.

88. Denied. Defendant representative(s) respond(s) that any investigation is in writing and speaks for itself.

89. Admitted.

90. Denied. The sum of any conversations with the attorneys from Obermayer Rebmann Maxwell & Hippel LLP are memorialized in a report, which speaks for itself.

91. Admitted.

92. Denied. Defendant representative(s) are/is not aware of what lawyers from Obermayer Rebmann Maxwell & Hippel LLP were told by Plaintiff other than what is produced in the

6

Exhibit 29

February 25, 2026
Defendant, Falls Township's Responses to Plaintiff's RFA

"Obermayer" report. The sum of any conversations are memorialized in the report, which speaks for itself.

93. Denied. Defendant representative(s) are/is not aware of what lawyers from Obermayer Rebmann Maxwell & Hippel LLP were told by Plaintiff other than what is produced in the "Obermayer" report. The sum of any conversations are memorialized in the report, which speaks for itself.

94. Denied. Defendant representative(s) are/is not aware of what Mr. Kent stated. The sum of any conversations with the attorneys from Obermayer Rebmann Maxwell & Hippel LLP are memorialized in a report, which speaks for itself. The sum of any conversations are memorialized in the report, which speaks for itself.

95. Denied. As of this response, Defendant representative(s) do/does not have an independent recollection as to whether or not Plaintiff's Formal Response to the Loudermill Notice was presented to the Falls Township Board of Supervisors.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. Admitted.

101. Denied.

102. Admitted.

103. Denied.

104. Denied. Defendant is not aware of any press release authored by Teresa Katalis. By Way of further response, if this request intends to refer to any press release authored by *Teresa Katalinis*, Defendant responds that any press release is in writing and speaks for itself.

105. Denied. Defendant is not aware of any press release authored by Teresa Katalis. By Way of further response, if this request intends to refer to any press release authored by *Teresa Katalinis*, Defendant responds that any press release is in writing and speaks for itself.

106. Denied. Defendant is not aware of any press release authored by Teresa Katalis. By Way of further response, if this request intends to refer to any press release authored by *Teresa Katalinis*, Defendant responds that any press release is in writing and speaks for itself.

7

Exhibit 29

February 25, 2026
Defendant, Falls Township's Responses to Plaintiff's RFA

MARSHALL DENNEHEY, P.C.

BY: _____

JAHLEE J. HATCHETT, ESQUIRE
Attorney ID No. 313604
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(215) 575-2780 Fax (215) 575-0856
Email: jjhatchett@mdwcg.com
Attorney for Defendant

Date: February 25, 2026

8

Exhibit 29

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD ELMORE

    Plaintiff,    :   CIVIL ACTON

  vs.         :

          :   No.  2:25-cv-02076

FALLS TOWNSHIP,    :

    Defendant.   :

          :   JURY TRIAL DEMANDED

          :

## CERTIFICATE OF SERVICE

   I, JAHLEE J. HATCHETT, ESQUIRE, do hereby certify that a true and correct copy of Defendant, Falls Township's Responses to Plaintiff's Requests for Admissions were sent to Plaintiff's counsel via electronic mail on the date below.

              **MARSHALL DENNEHEY, P.C.**

      BY:  _____

              JAHLEE J. HATCHETT, ESQUIRE
              Attorney ID No. 313604
              2000 Market Street, Suite 2300
              Philadelphia, PA  19103
              (215) 575-2780 Fax (215) 575-0856
              Email: jjhatchett@mdwcg.com
              Attorney for Defendant

Date: February 25, 2026

Exhibit 29

## VERIFICATION

I, Nelson Whitney, have reviewed documents and/or have prior knowledge of the claims raised based on my review of pertinent material. Based on my knowledge and/or review of information, I have concluded that the foregoing Responses to Plaintiff's Requests for Admissions are truthful and correct to the best of my knowledge, information and belief. I understand that my statements are made subject to the penalties of 18 Pa. Cons. Stat. § 4904 relating to unsworn falsification to authorities.

*/s/ Nelson Whitney*

By: _____

Chief, Nelson Whitney
Falls Township Police Department

Dated: February 25, 2026

Exhibit 29

## VERIFICATION

I, Matthew K. Takita, have reviewed documents and/or have prior knowledge of the claims raised based on my review of pertinent material. Based on my knowledge and/or review of information, I have concluded that the foregoing Responses to Plaintiff's Requests for Admissions are truthful and correct to the best of my knowledge, information and belief. I understand that my statements are made subject to the penalties of 18 Pa. Cons. Stat. § 4904 relating to unsworn falsification to authorities.

*/s/ Matthew K. Takita*

By:    _____
Matthew K. Takita, AIA, MCP
Director of Code Enforcement,
Falls Township

Dated: February 25, 2026

Exhibit 29

# Falls Township Police
## Incident Report Form

**22-10361**
7/26/2022
**Simple Assault**

**Primary Officer: ELMORE, EDWARD - 084**

| | | | | | |
|---|---|---|---|---|---|
| ☐ Juvenile Involved | ☑ Investigation | ☐ Video Available | ☐ Gang Related | | ☐ Paperless |
| ☐ Domestic Related | ☐ Suspects | ☐ Bias Crime | ☐ Accident | | ☐ Administrative |
| ☐ Alcohol Involved | ☑ Arrests Made | ☐ Drugs Involved | ☐ Ready for DA / Prosecutor | | ☐ Alarm Activated |

| Log Number | Incident Number | File Number | | Case Number | UCR    04E |
|---|---|---|---|---|---|
| 22-10361 | 084 | | | | ASSAULT: SIMPLE (OTHER) |

| Incident Type    ASSLT1 | | | Dispatcher | Source | District | Status |
|---|---|---|---|---|---|---|
| Simple Assault | | | | | 04 | |

**Incident Date / Times** | **Incident Occurred At or Between**

| Date Received | Day Rec'd | Rcvd | Disp | Arrv | Clrd | Earliest Date and Time | Latest Date and Time |
|---|---|---|---|---|---|---|---|
| 7/26/2022 | Tuesday | 1205 | 1205 | 1205 | | | |

| Disposition    ARREST | Cleared by Exception | ☐ Suspended |
|---|---|---|
| CLOSED BY ARREST | | |

| UCR Clearance | UCR Occur Date | UCR Clear Date | UCR Count | UCR Human Traffic Code | UCR HT Count |
|---|---|---|---|---|---|
| ARREST | 7/26/2022 | 7/26/2022 | 1 | | 0 |

**Location** ☐ Intersection

| 1444   SOUTH PENNSYLVANIA AVE | Cross Street |
|---|---|
| MORRISVILLE  PA  19067 | GPS Loc X | GPS Loc Y |

Municipality:

| Business Name | Premise Code | Arson Value |
|---|---|---|
| KENTS LAWN  & LANDSCAPING | | |

| Gang | Weather |
|---|---|

**Modus Operandi Coding**                                                      Victim:

Entry:                                                                         Property:

Exit:                                                                  Area: **MORRISVILLE**
                                                                           MORRIS

Method:                                                               Time of Day:

**WEAPON USED:**

| Caller / Complainant Type | Normal ☐ | Anonymous ☐ | Hangup ☐ | Refused ☐ |
|---|---|---|---|---|

**Incident Allegations/Offenses**

| Sequence | Offense Date | Charge Code | Charge Section | Charge Sub-Section | Description |
|---|---|---|---|---|---|
| 1 | 08/06/22 | 2709(a)(1) | 2709 | (a)(1) | HARASSMENT PHYS/CONTACT |
| 2 | 08/06/22 | 3503(b)(1)(i) | 3503 | (b)(1)(i) | DEFIANT TRESPASS/COMMUNICATION  TO ACTOR |
| 3 | 08/06/22 | 2701(a)(3) | 2701 | (a)(3) | SIMPLE ASSAULT/PHYSICAL MENACE |
| 4 | 08/06/22 | 2706(a)(1) | 2706 | (a)(1) | TERRORISTIC THREATS/VIOLENCE |

| 22-10361 | 7/26/2022 | ☒ | APPROVED BY: FANELLI, ANTHONY | PAGE    1 |
|---|---|---|---|---|
| IRF 1.6 | | | APPROVED ON: 7/26/2022 | Print Date/Time    12/29/2023 1:05:30 PM |

Exhibit 30                                          **Obermayer 0046**

# Falls Township Police
## Incident Report Form

**22-10361**
7/26/2022
**Simple Assault**

---

### INVOLVED PERSONS

#### ARRESTED-FEL/MISD      CODE: ARR

| Name (Last, First, Middle) - Address | Juvenile | Date of Birth | Age | Race | Sex | Ethnic | Social Security Number |
|---|---|---|---|---|---|---|---|
| BELL, LAWRENCE G<br>2337 W HAGERT ST<br>PHILADELPHIA PA 19132 | ☐ | 1/17/1974 | 48 | B | M | U | |

| Weight | Height | Hair | Eyes | Phone Number |
|---|---|---|---|---|
| 250 | 603 | BLK | BRO | 267-441-5766 |

| Driver License Number | State | Class | Expiration Date |
|---|---|---|---|
| 23890729 | PA | | |

| ID Provided | ID Detail |
|---|---|
| DRIVERS LICENSE | |

Link Comments

---

#### VICTIM      CODE: VCTM

| Name (Last, First, Middle) - Address | Juvenile | Date of Birth | Age | Race | Sex | Ethnic | Social Security Number |
|---|---|---|---|---|---|---|---|
| KENT, ROBERT W<br>22 THIMBLEBERRY LN MEDIA CAMPING OWNER<br>LEVITTOWN PA 19054 | ☐ | 5/3/1973 | 49 | W | M | N | 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 |

| Weight | Height | Hair | Eyes | Phone Number |
|---|---|---|---|---|
| | 600 | | | (215) 547-3716 |

| Driver License Number | State | Class | Expiration Date |
|---|---|---|---|
| 23000253 | PA | | |

| ID Provided | ID Detail |
|---|---|
| | |

Link Comments

| Involvement | Type (A=Auto/Truck) | Plate Number | Plate State | PlateType Code | Tag Year | Date Linked | Current Vehicle |
|---|---|---|---|---|---|---|---|
| **Involvement Not Entered** | | LWB7975 | PA | | | 07/26/2022 | ☑ |

| Vehicle Year | Make | Model | Color | Vehicle Identification Number (VIN) | USDOT Number | ICC Number |
|---|---|---|---|---|---|---|
| 2022 | FORD | EXP | BLK | | | |

| Vehicle Style/Type | Insurance Company | Insurance Company Policy Number |
|---|---|---|
| | | |

Involvement Comments

### INVOLVED BUSINESSES / ORGANIZATIONS

**07/26/2022**

| Business / Organization Name | Business Address |
|---|---|
| KENTS LAWN & LANDSCAPING | 1444 SOUTH PENNSYLVANIA AVE<br><br>MORRISVILLE, PA 19067 |

| Phone 1 | Phone 2 | Phone 3 |
|---|---|---|
| | | |

Involvement Comments

### ARREST INFORMATION

| Arrest Date | Person Arrested (Last Name, First Middle) | | | Juvenile |
|---|---|---|---|---|
| 07/26/2022 | BELL | LAWRENCE | G | N |

| Arrest Type | OTN | Ticket / Complaint Number |
|---|---|---|
| | R336469-0 | 10458 |

| Primary Charge | Primary Charge Description | Charge Type | Charge Class | Count(s) |
|---|---|---|---|---|
| 2706(a)(1) | TERRORISTIC THREATS/VIOLENCE | | | 1 |

| Arrest Disposition | Bail | UCR Code | Arraignment Date | Miranda by ID | Docket Number | Blood / Alcohol | Arrest | Summons |
|---|---|---|---|---|---|---|---|---|
| AR | | | | | | | ☒ | ☐ |

| Arresting Officer 1 | | Arresting Officer 2 |
|---|---|---|
| 084 | ELMORE, EDWARD | |

#### Secondary Charge(s)

| Charge | Description | Charge Type | Charge Class | Count(s) |
|---|---|---|---|---|
| 2701(a)(3) | SIMPLE ASSAULT/PHYSICAL MENACE | | | 1 |
| 3503(b)(1)(i) | DEFIANT TRESPASS/COMMUNICATION TO ACTOR | | | 1 |
| 2709(a)(1) | HARASSMENT PHYS/CONTACT | | | 1 |

---

| 22-10361 | 7/26/2022 | ☒ | APPROVED BY: FANELLI, ANTHONY<br>APPROVED ON: **7/26/2022** | PAGE 2 |
|---|---|---|---|---|
| IRF 1.6 | | | Print Date/Time   12/29/2023 1:05:30 PM | |

Draft Only

Exhibit 30            Obermayer 0047

# Falls Township Police

**22-10361**
7/26/2022
**Simple Assault**

## Incident Report Form

### RESPONDING / INVOLVED UNITS, OFFICERS, TIMES

| Division | Supervisor / ID | | |
|---|---|---|---|
| Unit Number | Officer / ID (Ofcr1 / Ofcr2) | | Officer / ID (Ofcr3 / Ofcr4) |
| | ELMORE, EDWARD     084 | | |

### COMMENTS / NARRATIVES

Title

| Narrative Created By / Creation Date | | 07/26/2022 | Narrative Updated By / Update On | 08/17/2022 |
|---|---|---|---|---|
| ELMORE, EDWARD | | | | |

Narrative Approved By / Approved Date

On July 26, 2022 at 1205 hours I, Ptlm. Elmore, of the Falls Twp. Police Dept responded to Kent's Tree Service at 1444 S. Pennsylvania Ave for a report of an assault. This location is also an occupied residence.

I met with the victim, Robert Kent. Kent said that Lawrence G. Bell Jr, who was still on scene, had showed up on one of his job sites. Bell was confronting workers on the site about qualifications and soliciting them to join the union he was representing. Bell then went to the office at 1444 S. Pennsylvania Ave where he confronted Kent. Kent said he told Bell numerous times to leave his property and not to harass his workers. Bell refused to leave. Kent said Bell made several threatening statements including: 'If you were in my neighborhood, I would kill you' Kent said Bell then hit his arm and then struck the visor he was wearing knocking it downward into his eyes and blocking his vision. Kent said he feared a further assault was imminent and he also feared for the safety of his children and grandchild inside the building.

I directed Bell to leave and informed him that he would receive charges from the court by mail. He had asked several times if it was legal for him to go to the work site if it was on a public road. I cautioned Bell that any actions to threaten, intimidate or retaliate against Kent would result in a more serious charge as he is the victim and witness.

While still on scene speaking with Kent, I observed Bell driving by. He reached out of his driver side window and over the roof making a 'finger gun' motion towards Kent signaling to a nearly identical vehicle following directly behind him. The subject in the following vehicle yelled 'hey there asshole' to Kent as he passed by. Kent said he feared that Bell was conspiring to either return with others or have others return on his behalf to cause damage to his property or injury to his family who reside at this location.

AW

### COMMENTS / NARRATIVES

Title

| Narrative Created By / Creation Date | | 08/16/2022 | Narrative Updated By / Update On | 08/17/2022 |
|---|---|---|---|---|
| ELMORE, EDWARD | | | | |

Narrative Approved By / Approved Date

8/10/22  Charges filed at DC 10 for this case. A hearing date of 9/14 has been assigned.

AW

### COMMENTS / NARRATIVES

Title
**Criminal Processing**

| Narrative Created By / Creation Date | | 08/25/2022 | Narrative Updated By / Update On | 09/14/2022 |
|---|---|---|---|---|
| OLMEDA, FRANCISCO | | | | |

Narrative Approved By / Approved Date

| 22-10361 | 7/26/2022 | [X] | APPROVED BY: FANELLI, ANTHONY | | PAGE   3 |
|---|---|---|---|---|---|
| IRF 1.6 | | | APPROVED ON: 7/26/2022 | Print Date/Time   12/29/2023 1:05:30 PM | |

Exhibit 30

Obermayer 0048

# Falls Township Police

## Incident Report Form

**22-10361**
7/26/2022
**Simple Assault**

| | |
|---|---|
| CROSIER, VICTORIA | 08/25/2022 |

**Narrative:**

On August 24, 2022 at 1436 hours Lawrence Bell responded to headquarters and was fingerprinted and photographed in reference to this case. Nothing Further. **Ofc. Olmeda/#117/AW**



| 22-10361 | 7/26/2022 | ☒ | APPROVED BY: FANELLI, ANTHONY | PAGE 4 |
|---|---|---|---|---|
| IRF 1.6 | | | APPROVED ON: **7/26/2022** | Print Date/Time  12/29/2023 1:05:30 PM |

Exhibit 30                    Obermayer 0049

**Archived:** Monday, March 2, 2026 1:07:43 PM
**From:** Hearn, Thomas
**Sent:** Thu, 26 Feb 2026 21:41:39
**To:** Schnecker, Aimee
**Subject:** FW: Elmore / Levittown now article
**Importance:** Normal
**Sensitivity:** None

---

**From:** Whitney, Nelson <n.whitney@fallstwppd.com>
**Sent:** Tuesday, January 9, 2024 8:59 AM
**To:** Hearn, Thomas <Thomas.Hearn@obermayer.com>; Atkins, Melissa <melissa.atkins@obermayer.com>; Rhodes, Brian <brian.rhodes@obermayer.com>
**Subject:** FW: Elmore / Levittown now article

> **WARNING:** This email originated from an external sender. Exercise caution before clicking links or opening attachments. When in doubt, contact the IT department.

**Privileged**

**From:** Thomas, George <g.thomas@fallstwppd.com>
**Sent:** Monday, January 8, 2024 3:55 PM
**To:** Whitney, Nelson <n.whitney@fallstwppd.com>
**Cc:** Matthew Takita <m.takita@fallstwp.com>
**Subject:** Elmore / Levittown now article

Chief Whitney:

It has come to my attention that there was an article recently published in Levittown Now regarding the retirement of Ofc. Ed Elmore's K-9 partner, Monty.

While I believe that it is appropriate to recognize Ofc. Elmore and Monty for their service to this agency and the community that we serve, there were parts of the article that concern me.

As you are aware, there has been a considerable amount of controversy surrounding the selection process for the K-9 that will replace Monty. PAFT members were advised that a selection process would take place in order to determine the next K-9 handler.

I have included the following excerpt from the article for your review:

"I'm looking forward to taking everything I've learned over the last 10 years and serving with my next canine partner," Elmore said, noting that Monty enjoys the company of other dogs and will be fast friends with Elmore's new partner. "They are social animals. They like the company. They never like to be alone. He truly enjoys being around other people and dogs."

After the selection process was announced, I expressed my concerns regarding the objectiveness of various elements of this process. The fact that an officer is now asserting, through the use of a local media outlet, that he will be receiving the next K-9 without a selection process taking place, is extremely troubling to PAFT members. I believe that this is further evidence that the Township intends to circumvent a fair and objective selection process.

Obermayer 0228

Exhibit 31

Respectfully,

George Thomas
PAFT President

Get Outlook for iOS



Obermayer 0229

Exhibit 31

Local Business & Member Supported!

# LEVITTOWN
## Now.com

HOME    ADVERTISE    JOBS

THE LATEST NEWS FROM THE LEVITTOWN, PA. AREA.

SUBMIT OBITUARY/DEATH NOTICE    SUPPORT LOCAL JOURNALISM

ABOUT/CONTACT US





# Falls Twp. Police Celebrates Career Of K-9 M Close y As He Nears

TRASH DADDY
DUMPSTER RENTALS
WHEN YOU NEED THEM!

• 12, 15, 20, AND 30 YARD DUMSTERS
• COMPETITIVE PRICING
• SAME OR NEXT-DAY AVAILABILITY
• RESIDENTIAL, COMMERCIAL, INDUSTRIAL

Exhibit 31

Elmore_000412

**LN** Staff    January 8, 2024

Tweet                    📌 Save



Officer Edward Elmore and his partner, Monty, in 2019.

Credit: Tom Sofield/LevittownNow.com

Falls Township police Officer Edward Elmore and his Belgian Malinois partner, Monty, have kept busy while serving the community. And now, the 12-year-old police pooch is ready to retire.

Elmore describes Monty not only as a work partner but also as a cherished family member.

**Close**



**TRASH DADDY**
**DUMPSTER RENTALS**
WHEN YOU NEED THEM!

● 12, 15, 20, AND 30 YARD DUMSTERS
● COMPETITIVE PRICING
● SAME OR NEXT-DAY AVAILABILITY
● RESIDENTIAL, COMMERCIAL, INDUSTRIAL

Elmore_000113

For the last decade, Falls Township Police Officer Edward Elmore and his partner Monty have been inseparable.

"We get up and get ready for work together," Elmore said of his partner, a 12-year-old Belgian Malinois. "Most of our days off are up at the house. You're bringing not just a job and a work partner but, you're bringing a new family member home."

Later this month, Monty will retire from Falls Township Police after faithfully serving the department since April 2014. Cross-trained in apprehension and recovery, Monty specializes in explosive detection.



Monty and Officer Elmore at meet and greet.

Credit: Submitted

Close



TRASH DADDY
DUMPSTER RENTALS
WHEN YOU NEED THEM!

● 12, 15, 20, AND 30 YARD DUMSTERS
● COMPETITIVE PRICING
● SAME OR NEXT-DAY AVAILABILITY
● RESIDENTIAL, COMMERCIAL, INDUSTRIAL

Elmore_000414

Exhibit 31

Throughout his career, Monty has assisted with a bomb threat at Montgomery County's municipal complex, as well as with school bomb threats.

"There's just no way to disprove a threat besides going through every inch of the place," Elmore said. "It would take 100 years (for police) to go through every drawer and every box."

But trained dogs, like Monty, can sniff out a potential school building threat within a few hours.

"There's nothing in the world that can replace them," Elmore said. "Nothing is as effective as a dog's nose."



Close



**TRASH DADDY**
**DUMPSTER RENTALS**
WHEN YOU NEED THEM!

- 12, 15, 20, AND 30 YARD DUMSTERS
- COMPETITIVE PRICING
- SAME OR NEXT-DAY AVAILABILITY
- RESIDENTIAL, COMMERCIAL, INDUSTRIAL

Elmore_000415

Exhibit 31

During the first year of the partners' time together, Monty helped apprehend someone involved in a rooftop burglary at Mike's Gun Shop. The suspect had entered through a three-foot hole in the building's roof. To make his getaway, the burglar crawled through the ceiling cavities in neighboring businesses. Monty noticed his scent "up high" and police ripped out ceiling tiles. The suspect's arm came through tiles in the adjacent pizza shop and Monty jumped up and pulled him through.

On another occasion, Monty helped apprehend a suspect involved in an attempted carjacking. Police received a tip that the suspect had been dropped off at the bottom of the street where he lived. Elmore and Monty responded, but 30 or 45 minutes had gone by.

"He could've been anywhere at that point," Elmore said, noting that Monty followed the suspect's scent underneath the highway and into a drainpipe. "Monty knew. Not a second guess. Had it not been for the dog, we would've never come up with this guy."

With his retirement looming, Monty will switch gears to notifying Elmore and his family when an Amazon driver is a few miles away or sniffing out all of the ingredients used in making the pizza being delivered.

"He's always alert," Elmore said of Monty and his other dog. "You always feel comfortable knowing that they're around. They're the best security system."

**Close**

**TRASH DADDY**
**DUMPSTER RENTALS**
WHEN YOU NEED THEM!

• 12, 15, 20, AND 30 YARD DUMSTERS
• COMPETITIVE PRICING
• SAME OR NEXT-DAY AVAILABILITY
• RESIDENTIAL, COMMERCIAL, INDUSTRIAL

Elmore_000416

Exhibit 31

"I've always had a love for dogs," Elmore said, adding that he enjoys training dogs. "The time you put in is always equal to the return you get. I couldn't imagine not having dogs in the family."



Monty at home.

Credit: Submitted

His love of working as a K-9 officer has led to sacrifices, including passing up tests for promotions. As a supervisor, Elmore would not have been able to work with dogs or respond to other municipalities with his canine partner.

"I'm looking forward to taking everything I've learned over the last 10 years and serving with my next canine partner," Elmore said, noting that Monty enjoys the company of other dogs and will be fast friends with Elmore's new partner. "They are social anir ____ ey like the company. They never like to be alone. He truly enjoys be ____ und other people and dogs."

**Close**

**TRASH DADDY**
**DUMPSTER RENTALS**
WHEN YOU NEED THEM!

● 12, 15, 20, AND 30 YARD DUMSTERS
● COMPETITIVE PRICING
● SAME OR NEXT-DAY AVAILABILITY
● RESIDENTIAL, COMMERCIAL, INDUSTRIAL

Elmore_000417

Exhibit 31

# Police Department



*"We get up and get ready for work together. Most of our days off are up at the house. You're bringing not just a job and a work partner, but you're bringing a new family member home."*

**- Edward Elmore**

# Tribute to Retiring K9 'Officer'

For the last decade, Falls Township Police Officer Edward Elmore and his partner Monty have been inseparable.

"We get up and get ready for work together," Elmore said of his partner, a 12-year-old Belgian Malinois. "Most of our days off are up at the house. You're bringing not just a job and a work partner but, you're bringing a new family member home."

Earlier this year, Monty retired from Falls Township Police after faithfully serving the department since April 2014. Cross-trained in apprehension and recovery, Monty specialized in explosive detection.

"Ten years is an ambitious target," Elmore said. "Some dogs age out well before that."

Throughout his career, Monty has assisted with a bomb threat at Montgomery County's municipal complex, as well as with school bomb threats.

"There's just no way to disprove a threat besides going through every inch of the place," Elmore said. "It would take 100 years (for police) to go through every drawer and every box."

But trained dogs, like Monty, can sniff out a potential school building threat within a few hours.

"There's nothing in the world that can replace them," Elmore said. "Nothing is as effective as a dog's nose."

During the first year of the partners' time together, Monty helped apprehend someone involved in a rooftop burglary at Mike's Gun Shop. The suspect had entered through a three-foot hole in the building's roof. To make his getaway, the burglar crawled through the ceiling cavities in neighboring businesses. Monty noticed his scent "up high" and police ripped out ceiling tiles. The suspect's arm came through tiles in the adjacent pizza shop and Monty jumped up and pulled him through.

At another time, Monty helped apprehend a suspect involved in an attempted carjacking. Police received a tip that the suspect had been dropped off at the bottom of the street where he lived. Elmore and Monty responded, but 30 or 45 minutes had gone by.

"He could've been anywhere," Elmore said, noting that Monty followed the suspect's scent underneath the highway and into a drainpipe. "Monty knew. Not a second guess. Had it not been for the dog, we would've never come up with this guy."

Now retired, Monty has switched gears to notifying Elmore and his family when an Amazon driver is a few miles away or



sniffing out all of the ingredients used in making the pizza being delivered.

"He's always alert," Elmore said of Monty and his other dog. "You always feel comfortable knowing that they're around. They're the best security system."

Elmore, who celebrated 24 years with Falls Township Police on Jan. 13, transitioned to K-9 work with Monty, his first four-legged partner.

"I've always had a love for dogs," Elmore said, adding that he enjoys training dogs. "The time you put in is always equal to the return you get. I couldn't imagine not having dogs in the family."

His love of working as a K-9 officer has led to sacrifices, including passing up tests for promotions. As a supervisor, Elmore would not have been able to work with dogs or respond to other municipalities with his canine partner.

"I'm looking forward to taking everything I've learned over the last 10 years and serving with my next canine partner," Elmore said, noting that Monty enjoys the company of other dogs and will be fast friends with Elmore's new partner. "They are social animals. They like the company. They never like to be alone. He truly enjoys being around other people and dogs."

| FALLS TOWNSHIP POLICE DEPARTMENT | POLICY # | 2.8.1 |
|---|---|---|
| | EFFECTIVE DATE | 11/06/02 |

| SUBJECT | DISCIPLINE | |
|---|---|---|
| PURPOSE | TO ESTABLISH GUIDELINES OF A UNIFORM DISCIPLINARY CODE AND UNIFORM PROCEDURES REGULATING THE FAIR AND EQUITABLE USE OF CORRECTIVE DISCIPLINARY ACTION. | |
| **PA ACCREDITATION STANDARD** | | |
| CATEGORY | | |
| TITLE | | |
| REVISION DATES | 11/04/2021 | NO OF PAGES    10 |
| DIRECTOR/CHIEF | _Miltn E. Mltg #(64)_ | DATE    11/04/2021 |

**PROCEDURE:**

1.    **Discipline**

The intent of these provisions is to ensure that members perform their duties and control their behavior both on and off duty, maintaining the public faith and trust that they have placed in us. Ever mindful of this, and of the conduct that is prohibited, can only result in the effective functioning of the police department and its members.

The offenses found throughout this manual will be the guide for the members to base their actions and performance on. These offenses will also be the guide in administering fair and uniform penalties for any violations committed.

Penalties recommended for the offenses listed will be within the prescribed limits without exception. The designated penalties will not prohibit the Chief from imposing any other remedy he/she deems appropriate, having just cause.

The provisions of the manual will be applied as set forth in the Preliminary Provisions.

The reckoning period will be for the time period specified for the offense charged, listed with the recommended penalties, in the provision of this manual violation. (See reckoning period in Definitions for the procedure.)

A.    General Rule - See Compliance with Laws and Manual Contents.

1.    All officers shall obey the laws of the United States and any State or local jurisdiction in which the officers are present.

CONFIDENTIAL                    FT PD POLICIES 0183

Exhibit 33

**Policy 2.8.1**
**Discipline**

2.   Any member of the department violating his/her oath or trust by committing an offense punishable under the laws and statues of the Commonwealth, municipal ordinances or this departmental manual may be subject to departmental discipline.

3.   Disciplinary penalties may be assessed in the following forms.

    a.   Supervisory and command personnel can take the following disciplinary action with the Chief's approval.

        1.   Oral reprimand
        2.   Recommend other penalties
        3.   Emergency suspension (until the next business day when it's in the best interest of the department.  Made by command or supervisory personnel.)

    b.   Emergency suspension follow-up.  The employee receiving the emergency suspension will report to the Chief's office on the next business day at 0900 hours, unless directed otherwise.  The supervisor or command officer who issued the suspension will also report to the Chief's office at that time.

    c.   Supervisory and command officers can recommend the following disciplinary actions but it needs the Chief's approval.

        1.   Counseling letter
        2.   Written reprimand
        3.   Suspension
        4.   Demotion
        5.   Dismissal

    d.   All these recommendations or actions will follow the established chain of command through the department.

C.   Initiating Disciplinary Action

Disciplinary action is the result of a witnessed violation or infraction or the result of an inquiry or investigation into an allegation of wrong doing or misconduct. They can be initiated or come from an infinite number of sources.  Whatever the source, the alleged misconduct must be reduced to writing.  It will include the following information.

- 130 -

CONFIDENTIAL                    FT PD POLICIES 0184

Exhibit 33

**Policy 2.8.1**
**Discipline**

1.    A summary of the allegations, including the information relative to the complaint, pertinent statements made by the complainant, witnesses and other involved individuals, their names, and a description of the incident being complained about, whether any physical evidence exists and the signature of the submitting officer.

2.    This memorandum or complaint will be submitted to the divisional command officer who will classify the incident. The investigation classification will be made pursuant to department procedures.

3.    Upon conclusion of the investigation conducted by the assigned investigator, the conclusions will be submitted as follows.

    If the action being taken is the conclusion of an assigned investigation or has been initiated by the supervisory or command staff personnel, the recommending officer will submit a memo or report detailing the following to the divisional command officer through the chain of command.

    a.    The name, rank and present assignment of the person being disciplined.

    b.    The date, time and location of the infraction or misconduct.

    c.    The section numbers of the violated provisions of this policy manual.

    d.    A complete statement of the facts surrounding the infraction or misconduct.

    e.    Discipline recommended and your signature.

4.    The officer being recommended for discipline will be advised by the recommending officer of the impending disciplinary action. That officer will be afforded the opportunity to submit an explanation detailing his/her actions, in writing, to the recommending officer. His/her explanation will be attached to the report. The report will then be submitted to the divisional command officer (Lieutenant).

5.    The Lieutenant will review this report. Once he/she has concluded any follow-up he/she wishes to conduct, he/she will submit his/her recommendations to the Chief for final disposition. Copies of his/her

- 131 -

Exhibit 33

**Policy 2.8.1**
**Discipline**

report will be provided to the officer being disciplined and to the recommending officer.

132

CONFIDENTIAL            FT PD POLICIES 0186

Exhibit 33

**Policy 2.8.1**
**Discipline**

6.      At the conclusion of each stage of the investigation, the submitting officer will include his/her findings, which must be on the following.

      a.      Unfounded - The investigation indicates that the acts complained of, did not occur.

      b.      Exonerated - The acts did occur, but were justified, lawful and proper.

      c.      Not sustained - The investigation failed to either prove or disprove the allegations made in the complaint.

      d.      Sustained - The investigation disclosed sufficient evidence to clearly prove the allegation made in the complaint occurred.

      e.      Suspended - All the leads in the matter have been exhausted, but the case has not been closed.

7.      At the completion of the investigation and findings, a recommendation for no discipline, or disciplinary action must be made.

## Introduction

The offenses herein shall be a guide in administering fair and uniform penalties for violations and policies of Falls Township Rules and Regulations.

Penalties recommended for offenses listed shall be within the prescribed limits. The schedule shall in no way limit any penalty which the Chief may impose.

Offenses not included in the following list shall result in penalties similar to those specified for listed offenses of comparable seriousness.

The "Reckoning Period" as used in this section, is that period of time during which an employee is expected to have a clean record. (The same type of offense he/she was found guilty of previously.)

All Reckoning periods shall be computed from the date the first offense was committed. The second, third and subsequent violations of the same section committed during the Reckoning Period of the first violation, shall be treated as second, third, etc., offenses.

The same type of offense committed after the Reckoning Period expires, counts as a first offense.

CONFIDENTIAL                    FT PD POLICIES 0187

Exhibit 33

**Policy 2.8.1**
**Discipline**

| CONDUCT UNBECOMING AN OFFICER | | | | | |
|---|---|---|---|---|---|
| SECTION | CHARGE | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | RECKONING PERIOD |
| 103.101 | Accepting bribes or gratuitous for permitting illegal acts. | Dismissal | ------- | ------- | ------- |
| 103.105 | Failure to report in writing, offers, bribes or gratuities to permit illegal acts. | 30 Days to Dismissal | Dismissal | ------- | Duration of Employment |
| 103.110 | Failure to report to the Police Chief, knowledge of corruption within the dept. including but not limited to, any illegal acts committed by a member of the dept. and/or offers and acceptance of bribes or gratuities to permit illegal acts. | 10 Days to Dismissal | Dismissal | ------- | Duration of Employment |
| 103.111 | Failure to cooperate fully in a dept. Admin. Investigation. | 10 Days to Dismissal | Dismissal | ------- | Duration of Employment |
| 103.112 | Making a false statement in response to an official dept. investigation. | 10 Days to Dismissal | Dismissal | ------- | Duration of Employment |
| CONDUCT UNBECOMING AN OFFICER | | | | | |
| SECTION | CHARGE | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | RECKONING PERIOD |
| 103.115 | Knowing and willfully making a false entry in an dept. report or record. | 5 Days to Dismissal | 30 Days to Dismissal | Dismissal | 2 Years |
| 103.125 | Knowingly associates, fraternizes, or conducts business transactions at any time or in any manner whatsoever, with known criminals or persons engaged in unlawful activities. | 10 Days to Dismissal | 30 Days to Dismissal | Dismissal | 2 Years |
| 103.135 | Fighting or quarreling with members of the dept., while one or both are on duty. | Reprimand to 10 Days | 10-20 Days | Dismissal | 2 Years |
| 103.140 | Soliciting for attorneys, bondsmen, or other business persons or firms for personal gain, while in uniform or on duty. | 30 Days to Dismissal | 60 Days to Dismissal | Dismissal | 2 Years |
| 103.145 | Using rude or insulting language or conduct offensive to the public, while on duty. | Reprimand to 5 Days | 5-10 Days | 15-20 Days | 2 Years |
| 103.150 | Releasing police info. or policy, without authorization, acting in the capacity of speaking for the dept. or the Chief. | Reprimand to 5 Days | 5-10 Days | 10-20 Days | 2 Years |

CONFIDENTIAL

FT PD POLICIES 0188

Exhibit 33

**Policy 2.8.1**
**Discipline**

| SECTION | CHARGE | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| **CONDUCT UNBECOMING AN OFFICER** | | | | | |
| 103.160 | Odor of alcohol on breath, while on duty | Reprimand to 10 Days | 10-15 Days | 25-30 Days | 2 Years |
| 103.175 | Repeated violations of Dept. Rules & Regulations and/or any other course of conduct indicating that a member has little or no regard for his responsibility as a member of the police dept. | 30 Days to Dismissal | Dismissal | ------- | ------- |
| 103.180 | The use of a controlled substance by any member is prohibited, except when prescribed in the care and treatment of a member by a licensed practitioner. | Dismissal | ------- | ------- | ------- |
| **INTOXICATION** | | | | | |
| 103.201 | On Duty | 30 days to Dismissal | Dismissal | ----------- | -------- |
| 103.205 | Causing a disturbance while publicly intoxicated | 5-30 Days | 60 Days to Dismissal | Dismissal | 2 Years |
| 103.210 | Off duty, not in uniform and arrested | 5-30 Days | 60 Days to Dismissal | Dismissal | Duration of Employment |
| 103.215 | Off duty in part of uniform | 5-30 Days | 60 Days to Dismissal | Dismissal | Duration of Employment |
| **INSUBORDINATION** | | | | | |
| 103.301 | Refusal to obey proper orders from superior | 5-30 Days | 15 Days to Dismissal | Dismissal | 2 Years |
| 103.305 | Using profane or insulting language to superior officer | 5-10 Days | 15-30 Days | Dismissal | 2 Years |

CONFIDENTIAL    FT PD POLICIES 0189

Exhibit 33

**Policy 2.8.1**
**Discipline**

| | | NEGLECT OF DUTY | | | |
|---|---|---|---|---|---|
| SECTION | CHARGE | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | RECKONING PERIOD |
| 103.401 | Failure to take police action, on or off duty, in or out of uniform and/or failure to make the required written report. | Reprimand to 10 Days | 10-30 Days | 15 Days to Dismissal | 2 Years |
| 103.405 | Asleep on duty | 2-5 Days | 15-20 Days | Dismissal | Duration of Employment |
| 103.410 | Absence without leave | Reprimand to 5 days | 5-10 Days | 15-20 Days | 1 Year |
| 103.415 | Failure to properly supervise subordinates or to prefer disciplinary charges; or to take other appropriate disciplinary action. | Reprimand to 5 Days and/or Demotion | 5-10 Days and/or Demotion | 15-20 Days and/or Demotion | 2 Years |
| 103.420 | Failure to comply with any of Chief's orders, directives, regulations, etc., or any oral or written orders of superiors or dept. policies. | Reprimand to 5 Days | 5-10 Days | 15-20 Days | 1 Year |
| 103.425 | Failure to conduct proper, thorough and complete investigation or failure to thoroughly search for, collect, preserve and identify evidence of persons, property and locations in any arrest or investigation. | Reprimand to 5 Days | 5-10 Days | 15-20 Days | 1 Year |
| 103.435 | Failure to report as witness when duly notified or subpoenaed. | Reprimand to 5 Days | 5-10 Days | 15-30 Days | 1 Year |
| 103.440 | Allowing prisoner escape through carelessness or neglect. | Reprimand to 10 Days | 15-20 Days | 25-30 Days | 1 Year |
| 103.450 | Failure to properly patrol sector; unauthorized absence from assignment; failure to respond to radio call; idle conversation or loafing. | Reprimand to 5 Days | 5-10 Days | 15-20 Days | 2 Years |

CONFIDENTIAL    FT PD POLICIES 0190

Exhibit 33

**Policy 2.8.1**
**Discipline**

| NEGLECT OF DUTY | | | | | |
|---|---|---|---|---|---|
| **SECTION** | **CHARGE** | **1ST OFFENSE** | **2ND OFFENSE** | **3RD OFFENSE** | **RECKONING PERIOD** |
| 103.460 | Failure to remove keys from patrol car, when unattended.<br><br>If stolen due to above | Reprimand to 5 Days<br><br>Reprimand to 10 days | 5-10 Days<br><br>15 days Dismissal | 15-20 Days<br><br>Dismissal | 2 Years<br><br>Duration of Employment |
| 103.465 | Loss or damage to police department property resulting from negligence or action or from failure to properly care for same. | Reprimand to 5 Days and/or Restitution | 5-10 Days and/or Restitution | 15-20 Days and/or Restitution | 1 Year |
| 103.470 | Damage to police or citizen vehicle, as a result of an accident, which is the officer's fault. | Reprimand to 10 Days | 5-15 Days and/or Driving School | 10-30 Days and/or Restitution | 2 Years |

| DISOBEDIENCE OF ORDERS | | | | | |
|---|---|---|---|---|---|
| **SECTION** | **CHARGE** | **1ST OFFENSE** | **2ND OFFENSE** | **3RD OFFENSE** | **RECKONING PERIOD** |
| 103.506 | Being found in any alcoholic beverage licensed establishment, in full/partial uniform, while not in performance of police duty. | Reprimand to 10 Days | 15-20 Days | 25-30 Days | 2 Years |
| 103.509 | Constructive possession of alcoholic beverages on the person, in police vehicle or on any police property. | 5-10 Days | 15-20 Days | 25-30 Days | 2 Years |
| 103.512 | Failure to be home without legitimate reason after reporting off sick. | 3-5 Days | 10 Days | 15 Days to Dismissal | 1 Year |
| 103.513 | Failure to obtain medical treatment or certificate while on sick leave, when required. | 3-5 Days | 10 Days | 15 Days to Dismissal | 1 Year |
| 103.515 | Failure to follow dept. procedures for the handling of evidence, personal effects and all other property taken into custody. | Reprimand to 5 Days | 5-10 Days | Dismissal | 2 Years |
| 103.516 | Engaged in employment while on sick status | 90 Days | Dismissal | ---------- | Duration of Employment |

CONFIDENTIAL                    FT PD POLICIES 0191

Exhibit 33

**Policy 2.8.1**
**Discipline**

| | | DISOBEDIENCE OF ORDERS | | | |
|---|---|---|---|---|---|
| SECTION | CHARGE | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | RECKONING PERIOD |
| 103.518 | Improper use, handling or display of firearms | Reprimand to 30 Days and/or Dismissal | ------- | ------- | 2 Years |
| 103.527 | Failure to report on or off assignment as prescribed. | Reprimand to 5 Days | 5-10 Days | 15-20 Days | 1 Year |
| 103.533 | Tardiness | Reprimand | 5-10 Days | 15-20 Days | 1 Year |
| 103.536 | Changing residence without giving 24 hours prior notification. | Reprimand to 5 Days | 5-10 Days | 15-20 Days | 1 Year |
| 103.539 | Unauthorized persons in police car. | Reprimand | 5-10 Days | 15-20 Days | 1 Year |
| 103.548 | Failure to carry required equipment, not in full prescribed uniform and failure to present a neat appearance in prescribed uniform in accordance with policy and directive. | Reprimand to 5 Days | 5-10 Days | 15-20 Days | 1 Year |
| 103.554 | Omitting, altering, or abbreviating title when addressing any superior officer. | Reprimand to 5 Days | 5-10 Days | 15-20 Days | 1 Year |
| 103.560 | Communicating or imparting confidential police information, either in writing or verbally, to unauthorized persons. | 5 Days to Dismissal | 20 Days to Dismissal | Dismissal | 2 Years |
| 103.563 | Failure to give prescribed identification when answering phone or refusal to give name and badge number when properly requested, while on duty. | Reprimand to 5 Days | 5-10 Days | 15-20 Days | 2 Years |
| 103.575 | No one shall, without being subpoenaed and previously notifying the Chief, appear or give testimony as a character witness for any defendant in a criminal trial/inquiry. | 5-15 Days | 15-30 Days | Dismissal | 2 Years |
| 103.578 | Engaging in any unauthorized remunerative occupation other than the duties of said employment of the Township of Falls. | 5-10 Days | 15-20 Days | 25-30 Days | 1 Year |
| 103.580 | Willfully damaging police department property and/or equipment. | 30 Days to Dismissal | Dismissal | ------- | ------- |

CONFIDENTIAL

FT PD POLICIES 0192

Exhibit 33

**Policy 2.8.1**
**Discipline**

| SECTION | CHARGE | 1ST OFFENSE | 2ND OFFENSE | 3RD OFFENSE | RECKONING PERIOD |
|---------|--------|-------------|-------------|-------------|------------------|
| | **DISOBEDIENCE OF ORDERS** | | | | |
| 103.581 | Interference with police radio broadcasting and tampering with police radio equipment. | Dismissal | ———— | ———— | ———— |
| 103.584 | Failure to notify commanding officer in writing whenever Pa. Motor Vehicle Operators License has been revoked, lapsed, suspended, or has expired | Reprimand | ———— | ———— | ———— |
| 103.590 | Failure to adhere to dept. policies, rules and regulations and applicable provisions of the basic labor agreement. | Reprimand to 5 Days | 2-10 Days | 5-15 Days | 1 Year |
| 103.595 | Failure to satisfactorily complete an assigned task, according to established policies and procedures. | Reprimand to 5 Days | 2-10 Days | 5-15 Days | 1 Year |

CONFIDENTIAL

FT PD POLICIES 0193

Exhibit 33